**Opinion issued November 24, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00716-CR

———————————

**ELDER WILFREDO SOMOZA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 2**
**Harris County, Texas**
**Trial Court Case No. 1910774**

---

## O P I N I O N

After the trial court denied his motion to suppress evidence, appellant, Elder

Wilfredo Somoza, pleaded guilty to the Class A misdemeanor offense of driving

while intoxicated, and the trial court assessed his punishment at forty-five days'

confinement.[1]  In two issues on appeal, appellant contends that the trial court erred in denying his motion to suppress blood evidence because (1) the trial court considered evidence outside of the probable cause affidavit when determining whether probable cause supported the magistrate's decision to issue a search warrant for his blood sample, and (2) the magistrate did not have a substantial basis for concluding that probable cause existed to support the warrant.

We affirm.

## Background

On July 31, 2013, Tomball Police Department Officer J. Rodriguez pulled appellant over for speeding at approximately 11:50 p.m.  Officer Rodriguez observed "several signs of intoxication, including red bloodshot glassy eyes, [a] strong odor of alcoholic beverage and slurred speech."  Appellant admitted that he had consumed two beers prior to being stopped.  Based on appellant's performance on the standardized field sobriety tests, Officer Rodriguez arrested appellant for driving while intoxicated ("DWI").  Appellant refused to provide a breath or blood sample.

Officer Rodriguez sought a search warrant to collect a blood sample from appellant.  After setting forth Officer Rodriguez's qualifications, the probable cause affidavit stated:

---

[1]     *See* TEX. PENAL CODE ANN. § 49.04 (Vernon Supp. 2015).

2

I have reason to believe that on or about July 31, 2013 at 11:59AM, in Harris County, Texas, the Defendant did then and there unlawfully operate a motor vehicle in a public place while intoxicated. My belief is based on the following:

In this case, I was on patrol in the 14900 block of FM 2920, Tomball, Harris County, Texas, on 7/31/13. I observed a black Nissan Pathfinder driving 61 miles per hour in a 45 mile per hour zone. I initiated a traffic stop and was able to make contact with the vehicle driver and identify him by Texas [driver's] license as Elder Somoza. I noticed the defendant to have red glassy eyes and [he was] slurring his speech. I then began to investigate a possible DWI.

I came into contact with Defendant and noticed a strong odor of alcoholic beverage, red bloodshot eyes, slurred speech, and slow movement. The defendant admitt[ed] drinking 2 beers.

I asked Defendant to perform some field sobriety tests to determine the Defendant's level of intoxication, including the Horizontal Gaze Nystagmus test, One Leg Stand test, and Walk and Turn test. . . .

[I observed] 6 clues of intoxication on the Horizontal Gaze Nystagmus test, 4 clues of intoxication on the One Leg Stand test, and 2 clues of intoxication on the Walk and Turn test.

Therefore, I placed the Defendant under arrest and transported the Defendant to the police station. At the station, J. Rodriguez offered Defendant an opportunity to provide a sample of the Defendant's breath and blood and Defendant declined to provide a sample. . . .

Officer Rodriguez swore to and signed the affidavit before Barbara Benton, a dispatcher for the Tomball Police Department and a notary public, at 1:38 a.m. on August 1, 2013. Officer Rodriguez faxed the probable cause affidavit to a magistrate, who signed a warrant for the blood sample at 2:00 a.m. on August 1, 2013.

After being charged with DWI, appellant filed a pretrial motion to suppress the evidence from the blood draw. Appellant pointed out that the probable cause affidavit stated that Officer Rodriguez had "reason to believe that on or about July 31, 2013 at 11:59AM, in Harris County, Texas, the Defendant did then and there unlawfully operate a motor vehicle in a public place while intoxicated," but the magistrate did not issue the search warrant until 2:00 a.m. on August 1, 2013. Appellant argued that the probable cause affidavit "does not contain sufficient facts within its four corners to establish probable cause that evidence of intoxication would be found in Defendant's blood at the time the search warrant was issued." Appellant argued that, looking solely to the four corners of the affidavit—which is all that courts may consider when determining whether a magistrate properly determined that probable cause to issue a warrant existed—"the magistrate signed the search warrant more than 14 hours after the affidavit alleged that the crime occurred." He further argued that, due to the dissipation of alcohol in the bloodstream over time, "[t]he longer the time gap between the initial stop and the eventual signing of the warrant, the less likely the evidence of intoxication would still be found in Defendant's blood."

At the hearing on his motion to suppress, appellant first objected to the State's "calling any additional witnesses to present new testimony that's not already presented within the [probable cause] affidavit." The trial court overruled

this objection. Officer Rodriguez testified that he came into contact with appellant at approximately 11:50 p.m. on July 31, 2013. Officer Rodriguez stated that the probable cause affidavit contained a typographical error; specifically, the affidavit erroneously stated that he came into contact with appellant at 11:59 a.m. when the affidavit should have read 11:59 p.m. Officer Rodriguez testified that he does not work the day shift, and, thus, he was not on duty at 11:59 a.m. on July 31, 2013, and he could not have encountered appellant at that time. He stated that he signed the probable cause affidavit before a notary public at 1:38 a.m. on August 1, 2013, or "a few hours after the stop."

The State also called Barbara Benton, the notary public who witnessed Officer Rodriguez sign the probable cause affidavit, to testify at the hearing. Benton testified that she worked the evening shift—8:00 p.m. to 6:00 a.m.—on July 31, 2013, that that is her typical shift, and that she has worked the evening shift for eleven years. Benton testified that she was not working at 11:59 a.m. on July 31, 2013, and that she notarized the affidavit as soon as Officer Rodriguez brought it to her.

The State and appellant both introduced copies of the probable cause affidavit and the search warrant at the suppression hearing. Both copies of the affidavit contain, on the top of the second page of the affidavit, a time stamp that reads "07/31/2013 12:34 FAX," and both copies of the search warrant contain, on

the bottom of the warrant, a time stamp that reads "08/01/2013 01:58" and, on the top of the document, a time stamp that reads "07/31/2013 12:35 FAX." The copy of the warrant that appellant proffered contains an additional time stamp at the top of the warrant that reads "07/31/2013 13:09 FAX."

The trial court stated the following on the record:

> I think the facts of this case are pretty clear. In the affidavit to support the search warrant the Tomball police officer wrote down 11:59 a.m., and[,] as he testified, he very simply made a mistake in putting a.m. instead of p.m., and I believe that testimony to be true. We heard— [b]ecause as he testified, [he] was not on duty at 11:59 a.m., had not met the defendant at 11:59 a.m. The officer who notarized the affidavit, she was not on duty at 11:59 a.m., so clearly the Court believes that her testimony it was factually impossible for the officer to have come into contact with the defendant at 11:59 a.m., and that clearly by putting 11:59 a.m. in his affidavit instead of 11:59 p.m., which was clearly a technical mistake on his part, it being very close to midnight, and so the State of Texas has satisfactorily explained the reason for the office[r]—for the affidavit to say a.m. when it should have read p.m., as it being just an honest mistake made by the officer when it was impossible for it to be 11:59 a.m., and clearly the other testimony all reflects that the affidavit was not notarized until after 12:00 a.m. the following day.

The trial court then denied appellant's motion to suppress. Appellant pleaded guilty to the offense of DWI, and the trial court assessed his punishment at forty-five days' confinement. This appeal followed.

**Sufficiency of Probable Cause Affidavit**

In his first issue, appellant contends that the trial court erred in denying his motion to suppress the blood draw when it considered evidence outside of the

6

probable cause affidavit when determining whether the magistrate had probable cause to issue the search warrant. In his second issue, appellant contends that the trial court erred in denying his motion to suppress because, when only the information contained within the affidavit is considered, the magistrate did not have a substantial basis for concluding that probable cause existed to support a warrant.

## A. Standard of Review

When reviewing a trial court's ruling on a motion to suppress evidence, we normally use a bifurcated standard of review. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Under this standard, we defer to the trial court's determination of historical facts but review de novo the application of the law to the facts. *Id.* However, when the question before the trial court is whether probable cause supported the issuance of the search warrant, the trial court does not make credibility determinations but is instead "constrained to the four corners of the affidavit." *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011) (citing *Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App. 2004)). Thus, when we review a magistrate's decision to issue a warrant, "we apply a highly deferential standard because of the constitutional preference for searches to be conducted pursuant to a warrant as opposed to a warrantless search." *Id.* (citing *Swearingen v. State*, 143 S.W.3d 808, 810–11 (Tex. Crim. App. 2004)). We will

uphold the magistrate's probable cause determination as long as the magistrate had a substantial basis for concluding that probable cause existed. *Id.*; *see also Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983) ("[T]he traditional standard of review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more.") (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736 (1960)).

We do not analyze probable-cause affidavits in a hyper-technical manner. *See McLain*, 337 S.W.3d at 271 (citing *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331). Instead, we interpret the affidavit in a "commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences." *Id.* We do not focus on information that is not contained within the probable cause affidavit; rather, we focus on the "combined logical force of facts that *are* in the affidavit." *Rodriguez v. State*, 232 S.W.3d 55, 62 (Tex. Crim. App. 2007) (emphasis in original). When in doubt, we defer to all reasonable inferences that the magistrate could have made when considering the affidavit. *McLain*, 337 S.W.3d at 271; *see also Jones v. State*, 364 S.W.3d 854, 857 (Tex. Crim. App. 2012) ("'[T]he magistrate's decision should carry the day in doubtful or marginal cases, even if

8

the reviewing court might reach a different result upon *de novo* review.'") (quoting *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010)).

To justify the issuance of a search warrant, the affidavit must set forth facts sufficient to establish probable cause that (1) a specific offense has been committed; (2) the specifically described property or items to be searched for or seized constitute evidence of that offense; and (3) the property or items constituting such evidence are located at the particular place to be searched. TEX. CODE CRIM. PROC. ANN. art. 18.01(c) (Vernon 2015); *McKissick v. State*, 209 S.W.3d 205, 211 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). We determine whether the facts alleged in the probable cause affidavit sufficiently support a search warrant by examining the totality of the circumstances. *State v. Griggs*, 352 S.W.3d 297, 301 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). "Probable cause is 'a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a set of neat legal rules." *Rodriguez*, 232 S.W.3d at 64 (quoting *Gates*, 462 U.S. at 232, 103 S. Ct. at 2329). A search warrant is supported by probable cause when the facts set out within the "four corners" of the affidavit are "sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued." *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006).

9

## B. Consideration of Evidence Outside Probable Cause Affidavit

Generally, when the trial court determines whether probable cause supported the magistrate's decision to issue a warrant, the court is constrained to the four corners of the probable cause affidavit. *McLain*, 337 S.W.3d at 271; *cf. Cates v. State*, 120 S.W.3d 352, 354–55 n.3 (Tex. Crim. App. 2003) (contrasting challenge to whether affidavit is legally sufficient to demonstrate probable cause, in which reviewing court is constrained to four corners of affidavit, with challenge to truthfulness of information contained within affidavit, in which reviewing court may look outside four corners of affidavit). The probable cause affidavit "must provide the magistrate with a substantial basis for concluding that a search warrant would uncover evidence of wrongdoing." *Davis v. State*, 144 S.W.3d 192, 197 (Tex. App.—Fort Worth 2004, pet. ref'd); *see also Elardo v. State*, 163 S.W.3d 760, 769 (Tex. App.—Texarkana 2005, pet. ref'd) ("Because the magistrate is confined to the four corners of the affidavit in determining probable cause, the state cannot supplement the probable cause affidavit with additional information not contained in the affidavit."). The State may not use testimony at a suppression hearing to "remedy defects in a warrant." *Elardo*, 163 S.W.3d at 769; *Barraza v. State*, 900 S.W.2d 840, 843 (Tex. App.—Corpus Christi 1995, no pet.) ("While we must apply the totality of the circumstances standard in testing the sufficiency of the affidavit, this application only goes to the circumstances included in the

affidavit. That is why we must restrict ourselves to the 'four corners' of the affidavit.") (internal citation omitted).

However, an exception to this rule exists when the State alleges that a typographical error or a technical defect exists in the search warrant. The Court of Criminal Appeals has held that "purely *technical* discrepancies in dates or times do not automatically vitiate the validity of search or arrest warrants." *Green v. State*, 799 S.W.2d 756, 759 (Tex. Crim. App. 1990) (emphasis in original). The two objectives of the law relating to search warrants are (1) to ensure there is adequate probable cause to search and (2) to prevent a mistaken execution of a warrant against an innocent third party. *Id.* at 757. Because these objectives "are not furthered by rigid application of the rules concerning warrants," reviewing courts "review technical discrepancies with a judicious eye for the procedural aspects surrounding issuance and execution of the warrant." *Id.* In situations involving purely technical defects in a search warrant, the Court of Criminal Appeals has allowed the State to offer explanatory testimony at the suppression hearing to demonstrate that the defect is merely a technical or clerical error. *See id.* at 759. The court stated:

> When the question on appeal relates to descriptive facts supporting the probable cause determination, a reviewing court may logically look behind the warrant to the supporting affidavit. But, the same may not be said for all so-called "technical defects" acknowledged by the State. Due to the nature of such errors, this Court has held such defects may be cured by explanatory testimony.

11

*Id.* at 760.

In *Green*, the face of the search warrant reflected that it was signed and issued by the magistrate on March 20, 1987, but the return on the warrant stated that it was executed on March 25, 1987. *Id.* at 757. The defendant moved to suppress and argued that the warrant was invalid because, on its face, it violated Code of Criminal Procedure article 18.07, which provides that a warrant "shall be executed within a time frame of three days." *Id.* The Court of Criminal Appeals, in addressing the State's contention that the March 20, 1987 date on the warrant was a clerical error, noted that the following discrepancies existed among the probable cause affidavit, the warrant, and the return:

> [T]he sworn complaint of the officer requesting the warrant reflects the affiant received his informant's information on March 25, 1987. The affidavit contains a file date of 10:30 a.m. on the same day. The "form" warrant then recites, as noted *ante* and after two blanks were filled in with the date of March 20, 1987, that the warrant "came to hand" and was executed on March 25, 1987. The latter date is twice typed onto the document, while the earlier date is scrawled into the appropriate blanks. The same document reflects a return date of March 25th as well.

*Id.* at 760. Thus, the warrant was "dated on an earlier day than the affidavit needed to support issuance of the warrant, and a corresponding later date appear[ed] on the bottom of the warrant document as the return thereof." *Id.* at 760–61.

The Court of Criminal Appeals noted that, although the State claimed that the earlier date of March 20 was a clerical error, the State offered no evidence at

12

the suppression hearing to support this contention. *Id.* at 761. Because there was a "total lack of evidence corroborating the State's contention of clerical error," the Court of Criminal Appeals ultimately concluded that the trial court should have granted the defendant's motion to suppress. *Id.*; *see also Rougeau v. State*, 738 S.W.2d 651, 663 (Tex. Crim. App. 1987) (considering testimony at suppression hearing demonstrating that arrest warrant date of January 6, 1977, rather than January 6, 1978, which was when warrant was actually obtained and defendant arrested, was typographical error), *overruled on other grounds by Harris v. State*, 784 S.W.2d 5 (Tex. Crim. App. 1989); *Lyons v. State*, 503 S.W.2d 254, 255–56 (Tex. Crim. App. 1973) (considering undisputed testimony at suppression hearing that officer committed typographical error when he dated probable cause affidavit July 11, 1971, and search occurred on that date, but search warrant was dated March 11, 1971); *Martinez v. State*, 285 S.W.2d 221, 222 (Tex. Crim. App. 1955) (considering testimony of magistrate at suppression hearing that jurat of probable cause affidavit incorrectly stated that affidavit was sworn to before magistrate on December 13, 1955, when it was actually sworn to on January 13, 1955, which was when warrant issued).

Two of our sister courts of appeals have, in unpublished decisions, extended the rationale of *Green* to allow for the consideration of testimony at a suppression hearing that an error in the supporting probable cause affidavit was a typographical

13

error.  In *State v. Welborn*, the probable cause affidavit stated two different dates for the traffic stop at issue.  *See* No. 02-14-00464-CR, 2015 WL 4599379, at *1 (Tex. App.—Fort Worth July 30, 2015, pet. filed) (mem. op., not designated for publication).  The affiant first stated that the stop occurred "on or about the 02 day of September, 2013," but then stated several paragraphs later that the stop occurred "[o]n Sunday, September 1, 2013, at approximately 0352 hours."  *Id.*  The affidavit concluded with the affiant swearing to the facts alleged "on this the 2 day of September, 2013."  *Id.*  The search warrant for a blood draw issued at 5:30 a.m. on September 2, 2013.  *Id.*  The trial court allowed the affiant to testify at the suppression hearing that the reference to the stop occurring on September 1 was a clerical error, and the court made an explicit finding that the September 1 date was a clerical error.  *Id.*

The Fort Worth Court of Appeals held that the trial court's fact finding regarding the clerical error was supported by the record.  *Id.* at *3.  The court cited *Green* to support its conclusion that, "[i]n instances such as this case, 'parol evidence to explain the error on the face of the instrument' may be considered in determining whether the issuing magistrate had a substantial basis in issuing its warrant."  *Id.* (quoting *Green*, 799 S.W.2d at 761).  The court held that because the trial court found that the September 1 date was a clerical error and that the correct date of the stop was September 2, "the trial court should have legally concluded

that the clerical error did not vitiate the search warrant." *Id.*; *see also Reyes v. State*, No. 02-11-00327-CR, 2013 WL 1338023, at *1, 3 (Tex. App.—Fort Worth Apr. 4, 2013, no pet.) (mem. op., not designated for publication) (holding that trial court did not abuse its discretion by allowing testimony from affiant that statement in probable cause affidavit that controlled buy occurred on May 18, 2009, was typographical error and correct date was May 18, 2010); *Salzido v. State*, No. 07-10-0031-CR, 2011 WL 1796431, at *5 (Tex. App.—Amarillo May 11, 2011, pet. ref'd) (mem. op., not designated for publication) (holding that trial court properly considered testimony of affiant at suppression hearing that references to incorrect name of accused and date were typographical errors); *Schornick v. State*, No. 02-10-00183-CR, 2010 WL 4570047, at *3 (Tex. App.—Fort Worth Nov. 4, 2010, no pet.) (mem. op., not designated for publication) (considering testimony of affiant at suppression hearing that statement in probable cause affidavit that traffic stop occurred on January 31, 2008, was clerical error and that stop actually occurred on January 31, 2009); *cf. Meeks v. State*, 851 S.W.2d 373, 377–78 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (stating that date affiant swore to facts contained within probable cause affidavit before magistrate "may have been a clerical error" when affidavit reflected that affiant swore to facts on August 15, 1991, four months before affiant received relevant information from confidential information on December 13, 1991, as stated in affidavit, and four months before

warrant issued on December 17, 1991, but sustaining appellant's point of error challenging trial court's denial of motion to suppress because State offered no explanation for inconsistencies and, thus, "[t]here is no evidence in the record to explain the discrepancies in the dates" contained within affidavit).

Here, the probable cause affidavit in support of a search warrant seeking a blood draw from appellant stated that Officer Rodriguez had reason to believe that appellant "on or about July 31, 2013 at 11:59AM" unlawfully operated a motor vehicle in a public place while intoxicated. The affidavit stated that it was sworn to before a notary on August 1, 2013, at 1:38 a.m. The magistrate signed the search warrant at 2:00 a.m. on August 1, 2013. Appellant moved to suppress the blood evidence on the basis that, as the affidavit stated that the offense occurred at 11:59 a.m. on July 31, 2013, the information in the affidavit supporting a conclusion that evidence of intoxication could be found in appellant's bloodstream was stale by the time the magistrate issued the search warrant at 2:00 a.m. on August 1, 2013, fourteen hours later.

In response, the State argued that "11:59 a.m." in the probable cause affidavit was a typographical error and that Officer Rodriguez actually came into contact with appellant at 11:59 p.m. on July 31, 2013, only two hours before the magistrate issued the search warrant. At the suppression hearing, the State sought to corroborate this contention with the testimony of Officer Rodriguez and Barbara

Benton, the notary who witnessed Rodriguez's signature on the affidavit. The trial court allowed this testimony over appellant's objection. Officer Rodriguez testified that he came into contact with appellant at 11:50 p.m. on July 31, 2013, that the recitation in the affidavit that the offense occurred at 11:59 a.m. on July 31, 2013, was a typo, that he worked the evening shift and thus was not on duty at 11:59 a.m. on July 31, and that he signed the affidavit before a notary at 1:38 a.m. on August 1, 2013, "a few hours after the stop." Benton likewise testified that she worked the evening shift from 8:00 p.m. to 6:00 a.m., that she had worked that shift for approximately eleven years, that she was not on duty at 11:59 a.m. on July 31, and that she notarized the affidavit as soon as Officer Rodriguez brought it to her. Appellant cross-examined both witnesses, but he did not put on any controverting evidence suggesting that the traffic stop actually occurred at 11:59 a.m. on July 31, 2013, and thus the "a.m." indication on the affidavit was not erroneous.

Although the general rule is that when reviewing a magistrate's probable cause determination the trial court is constrained to the four corners of the probable cause affidavit, the Court of Criminal Appeals has consistently allowed the State to present testimony at a suppression hearing to support a contention that the search warrant contains typographical errors. *See, e.g.*, *Green*, 799 S.W.2d at 760 ("[T]his Court has held that such [technical] defects may be cured by explanatory

17

testimony."). Two of our sister courts have extended this rationale to allow the State to present testimony at a suppression hearing to support a contention that the supporting probable cause affidavit contains a typographical error. *See, e.g.*, *Welborn*, 2015 WL 4599379, at \*3; *Salzido*, 2011 WL 1796431, at \*5. We adopt the rationale of our sister courts and conclude that the trial court properly allowed testimony from Officer Rodriguez and Benton at the suppression hearing to explain why the "11:59 a.m." notation on the probable cause affidavit was a typographical error.

Appellant cites to two Court of Criminal Appeals cases specifically in the DWI context, *Crider v. State*, 352 S.W.3d 704 (Tex. Crim. App. 2011), and *State v. Jordan*, 342 S.W.3d 565 (Tex. Crim. App. 2011), for the proposition that the trial court should not have considered extrinsic testimony at the suppression hearing. *Crider* and *Jordan* are factually distinguishable from this case because, in both of those cases, the probable cause affidavit did not state a time for when the officer encountered the DWI suspect at all. *See Crider*, 352 S.W.3d at 706 (noting that officer did not state in affidavit time that he observed defendant driving while intoxicated); *Jordan*, 342 S.W.3d at 568 (noting that probable cause affidavit did not specifically state time officer made his observations of defendant). Neither case involved a situation in which the probable cause affidavit stated a time that the officer encountered the defendant that the State asserted was a typographical

18

error, allowing to present extrinsic testimony to establish the typographical error. Thus, neither case justifies holding that the State was not entitled to demonstrate the typographical error through extrinsic testimony.[2]

The trial court considered Officer Rodriguez's and Benton's testimony and explicitly stated on the record that the "11:59 a.m." notation in the probable cause affidavit was a "technical mistake." The testimony presented at the suppression hearing supports this conclusion, and appellant presented no evidence that the traffic stop actually occurred at 11:59 a.m. on July 31, 2013, such that the notation on the affidavit was not erroneous. Thus, the evidence, when viewed in the light most favorable to the trial court's ruling, supports the trial court's fact finding that the notation of "11:59 a.m." was a typographical error or technical defect and that Officer Rodriguez came into contact with appellant at 11:59 p.m. on July 31, 2013. *See State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006) ("When a trial court makes explicit fact findings, the appellate court determines whether the

---

[2]     The Fort Worth Court of Appeals distinguished *Crider* on this same basis in *Welborn*, noting that the case currently before the court involved "'a discrepancy in dates' instead of containing no date at all." *State v. Welborn*, No. 02-14-00464-CR, 2015 WL 4599379, at *3 (Tex. App.—Fort Worth July 30, 2015, pet. filed) (quoting *Green v. State*, 799 S.W.2d 756, 760 (Tex. Crim. App. 1990)). The Fort Worth court then stated, "In instances such as this case, 'parol evidence to explain the error on the face of the instrument' may be considered in determining whether the issuing magistrate had a substantial basis in issuing its warrant." *Id.* (quoting *Green*, 799 S.W.2d at 761). The court ultimately concluded that because the trial court explicitly found that an error in the date of the alleged offense listed in the probable cause affidavit was a clerical error, the trial court "should have legally concluded that the clerical error did not vitiate the search warrant." *Id.*

evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings."). The trial court thus properly concluded that the typographical error contained within the probable cause affidavit did not vitiate the subsequently-issued search warrant.

Officer Rodriguez's testimony at the suppression hearing that the traffic stop occurred at 11:59 p.m. on July 31, 2013, combined with the information in the probable cause affidavit that Rodriguez could smell a strong odor of alcohol when he encountered appellant, that appellant was speeding, that appellant had red, glassy, and bloodshot eyes, that appellant was slurring his speech, that appellant was moving slowing, and that appellant performed poorly on the standardized field sobriety tests, sufficiently demonstrates that the magistrate had a substantial basis for determining that probable cause existed to believe that evidence of intoxication was present in appellant's bloodstream at the time the warrant issued two hours after the traffic stop. *See McLain*, 337 S.W.3d at 271 (stating standard for determining whether probable cause supported search warrant); *Hogan v. State*, 329 S.W.3d 90, 96 (Tex. App.—Fort Worth 2010, no pet.) (holding that affidavit sufficiently set forth probable cause to support issuance of search warrant in DWI case when affidavit set out defendant's performance on field sobriety tests, stated that defendant had recklessly driven vehicle, that strong odor of alcohol was present, that defendant had bloodshot and watery eyes, that defendant had swayed

and was unsteady on his feet, and that appellant had a "staggered walk"). We hold that the trial court properly denied appellant's motion to suppress.

We overrule appellant's first and second issues.

**Conclusion**

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Massengale, and Lloyd.

Justice Massengale, concurring.

Publish. TEX. R. APP. P. 47.2(b).