**Opinion issued August 17, 2023**



In The

# Court of Appeals

### For The

# First District of Texas

———————————

## NO. 01-22-00645-CR

## NO. 01-22-00646-CR

———————————

## THE STATE OF TEXAS, Appellant

## V.

## QUOC HUYNH, Appellee

---

### On Appeal from County Criminal Court No. 13
### Harris County, Texas
### Trial Court Case Nos. 2274021 & 2274022

---

### MEMORANDUM OPINION

In this interlocutory appeal,[1] appellant, the State, challenges the trial court's

order granting the pretrial motion to suppress filed by appellee, Quoc Huynh. In

---

[1] *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5).

three issues, the State contends that the trial court erred in granting appellee's motion to suppress a search warrant for blood evidence and "any test results from a blood sample obtained pursuant to the search warrant."

We reverse and render.

## Background

Appellee was charged by two informations with the misdemeanor offense of driving while intoxicated ("DWI"), second offense[2] and the misdemeanor offense of unlawfully carrying a weapon in a motor vehicle.[3]  According to the affidavit of Harris County Constable's Office Precinct 5 Deputy B. Benton,[4] which was used to support a search warrant for blood evidence, on August 18, 2019, at about 2:57 a.m., Benton was "on routine patrol" on the West Sam Houston Parkway in Harris County, Texas when he noticed a "blue BMW sedan" traveling "at an excessive rate of speed."  The "posted limit" on that portion of the roadway was sixty-five miles per hour.  Benton pursued the car and had "to travel up to 134 miles per hour to catch up and get [appellee to] stop[]."

---

[2]     TEX. PENAL CODE ANN. §§ 49.04(a), 49.09(a); appellate cause no. 01-22-00645-CR, trial court cause no. 2274021.

[3]     TEX. PENAL CODE ANN. § 46.02(a-1), (b); appellate cause no. 01-22-00646-CR, trial court cause no. 2274022.

[4]     A copy of Deputy Benton's search warrant affidavit was admitted into evidence at a hearing on appellee's March 17, 2022 motion to suppress.

2

When Deputy Benton "came into contact with [appellee]," he noticed that appellee had "red, blood shot eyes, [a] strong odor of alcoholic beverage coming from his breath," and "slurred speech" and "he swayed while standing." Benton asked appellee to perform certain standard field sobriety tests, but appellee refused to do so. Appellee also refused Benton's request to "provide a sample of the [his] breath and/or blood."

Deputy Benton then "placed [appellee] under arrest and transported [him] to the police station." "Based on the totality of the circumstances[,] including [appellee's] actions and performance prior to the testing, [Benton] formed the opinion that [appellee] was intoxicated" and "had lost the normal use of [his] mental and physical faculties," and that a blood sample from appellee would "provide evidence of [his] state of intoxication as well as evidence of the type of substance" that appellee had "consumed."

On March 17, 2022, appellee filed a motion to suppress the search warrant for blood evidence and any testing results obtained as a result of the search warrant. In his motion, appellee argued that the affidavit executed by Deputy Benton was "insufficient to justify the issuance of [a search] warrant" because it was "largely conclusory and speculative" and did not indicate that appellee had lost "the normal use of his mental and physical faculties." Specifically, appellee asserted that,

3

contrary to Benton's testimony,[5] the videotaped recording from Benton's body camera accurately recorded his encounter with appellee and the videotaped recording did not support Benton's description of appellee's condition in the affidavit which was used to support the search warrant.

According to appellee, in the affidavit supporting the search warrant, Deputy Benton stated that when he "came into contact" with appellee, he "noticed red, blood shot eyes," a "strong odor of alcoholic beverage coming from [appellee's] breath, slurred speech," and that appellee "swayed while standing." But appellee asserted that the videotaped recording showed that while appellee and Benton may have "miscommunicate[d]" and appellee "may not [have] directly answer[ed]" Benton's questions, appellee's "speech [wa]s objectively clear, and [his] words [we]re properly enunciated." Further, appellee asserted that the videotaped recording showed that appellee was "stand[ing] tall and straight" and did not "sway." Appellee argued that because the videotaped recording from Benton's body camera contradicted Benton's description of appellee in his affidavit, "[p]robable cause" for issuance of the warrant "did not exist."

---

[5] The testimony that appellee refers to in his March 17, 2022 motion to suppress is not testimony contained in Deputy Benton's affidavit. It appears be testimony that Benton gave at a May 20, 2021 hearing held on appellee's prior motion to suppress. That motion, which was based on *Franks v. Delaware*, 438 U.S. 154 (1978), was denied by the trial court before appellee filed his March 17, 2022 motion to suppress.

4

On July 6, 2022, the trial court held a hearing on appellee's March 17, 2022 motion to suppress. The trial court then granted the motion to suppress the search warrant for blood evidence and "any test results from a blood sample obtained pursuant to the search warrant," and at the State's request, entered findings of fact and conclusions of law. In addition to Deputy Benton's affidavit supporting the search warrant, which was admitted into evidence at the July 6, 2022 hearing, the trial court relied on evidence admitted at a May 20, 2021 hearing on appellee's prior unsuccessful motion to suppress—including Benton's testimony and the videotaped recording from Benton's body camera—to make the following findings of fact:

1. [T]his [c]ourt makes no finding as to whether Deputy Benton is a reliable and credible witness.

2. On August 18, 2019, at around 2:30 a.m. in the 4000 block of West Sam Houston Parkway, Deputy Benton observed that [appellee was] driving a blue BMW sedan well in excess of the 65 [miles-per-hour] speed limit.

3. Deputy Benton initiated a traffic stop of [appellee] based on [appellee]'s traffic violation—speeding.

4. Deputy Benton stated that he noticed [appellee] had red, blood shot eyes.

5. Deputy Benton stated that [appellee] had slurred speech.

6. Deputy Benton stated he noticed that [appellee] had a strong odor of alcohol coming from his breath.

7. [Appellee] refused to submit to any standard field sobriety tests.

5

8. At [a May 20, 2021 hearing], Deputy Benton testified to the specific training that he received that pertain[ed] specifically to intoxication signs.

9. At the [May 20, 2021 hearing], Deputy Benton testified to the different signs of intoxication that he observed from [appellee].

The trial court then made the following conclusions of law:

1. Based on the sworn affidavit of Deputy Benton, this [c]ourt finds lawful Benton's initiation and execution of the traffic stop for speeding. Deputy Benton had reasonable suspicion for the stop.

2. Based on *State v. Baldwin*, [664 S.W.3d 122 (Tex. Crim. App. 2022)] . . . the first seven paragraphs of the search warrant affidavit by Deputy Benton [we]re boilerplate.

3. The boilerplate language in the search warrant affidavit as to an officer's training and experience cannot be the same for every officer [who] uses this type of affidavit when obtaining a search warrant for the search and seizure of blood samples for a suspect arrested for [DWI].

4. Deputy Benton's training, as he describe[d] in the [May 20, 2021 hearing], differs from the training described in the search warrant affidavit.

5. The portions of the search warrant affidavit that pertain[ed] to [appellee], that Deputy Benton mention[ed], [were] not specific and detailed enough to conclude that a warrant for the search and seizure of blood samples should be issued by a [m]agistrate.

6. None of the different signs of intoxication as Deputy Benton described [at] the [May 20, 2021 hearing] [were] described or detailed in the search warrant affidavit.

7. [T]here were not sufficient, articulable facts provided in the search warrant affidavit from which a magistrate could find probable cause.

6

## Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *See Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion, and the trial court's application of the law to the facts de novo. *Id.* At a suppression hearing, the trial court is the sole trier of fact and judge of a witness's credibility, and it may choose to believe or disbelieve all or any part of the witness's testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). If, as in this case, the trial court makes express findings of fact, we review the evidence in the light most favorable to the trial court's ruling and determine whether the evidence supports the fact findings. *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Id.*

We review the trial court's legal ruling de novo unless its explicit findings of fact that are supported by the record are also dispositive of the legal ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Valtierra*, 310 S.W.3d at 447–48.

**Motion to Suppress**

In its first, second, and third issues, the State argues that the trial court erred in granting appellee's motion to suppress because it relied on information outside the four corners of the search warrant affidavit; it failed to give due deference to the magistrate's determination that probable cause existed; and it incorrectly concluded that the search warrant affidavit lacked sufficient probable cause to support issuance of the warrant.

The Fourth Amendment of the United States Constitution and Article I, Section 9 of the Texas Constitution protect individuals from unreasonable searches and seizures. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *State v. Betts*, 397 S.W.3d 198, 203 (Tex. Crim. App. 2013). The Fourth Amendment requires that "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation." U.S. CONST. amend IV; *see also* TEX. CONST. art. I, § 9; TEX. CODE CRIM. PROC. ANN. art. 1.06. A search warrant may be obtained from a magistrate only upon the submission of an affidavit setting forth substantial facts establishing probable cause. TEX. CODE CRIM. PROC. ANN. art. 18.01(b).

A court's review of an affidavit supporting a search warrant is not de novo. *Blake v. State*, 125 S.W.3d 717, 722 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *see also Illinois v. Gates*, 462 U.S. 213, 236–37 (1983); *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004); *Long v. State*, 525 S.W.3d 351, 365–66

8

(Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). Instead, the reviewing court's task is to determine whether a reasonable reading of the affidavit provides a substantial basis for the magistrate's conclusion that probable cause existed. *Gates*, 462 U.S. at 238–39; *Diaz v. State*, 632 S.W.3d 889, 892 (Tex. Crim. App. 2021). In reviewing the sufficiency of the affidavit, the reviewing court owes "great deference to a magistrate's probable cause determination," including any implicit findings supporting it. *Baldwin*, 664 S.W.3d at 130. Such deference is owed even in close cases "to encourage [law enforcement] officers to use the warrant process." *Id.*; *see Duarte*, 389 S.W.3d at 354.

In determining whether probable cause supports the issuance of a search warrant, the reviewing court makes no credibility determinations, and its review is limited to the four corners of the affidavit. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011); *Somoza v. State*, 481 S.W.3d 693, 699 (Tex. App.—Houston [1st Dist.] 2015, no pet.). The reviewing court should also be mindful that the magistrate may have "use[d] logic and common sense to make inferences" based on the facts contained in the affidavit. *State v. Elrod*, 538 S.W.3d 551, 556 (Tex. Crim. App. 2017); *see also State v. Jordan*, 342 S.W.3d 565, 569 (Tex. Crim. App. 2011) (when magistrate construes probable cause affidavit, he is permitted to "interpret the affidavit in a non-technical, common-sense manner and may draw reasonable inferences from the facts and circumstances contained within its four

9

corners"). Thus, the reviewing court "should not invalidate a warrant by interpreting an affidavit in a hyper-technical rather than commonsense manner." *Baldwin*, 664 S.W.3d at 130. "When in doubt, reviewing courts should defer to all reasonable inferences a magistrate could have made." *Id.*

As to the State's first issue—whether the trial court erred by considering information outside of the four corners of the search warrant affidavit—we observe that the trial court, in its findings of fact, stated that in addition to reviewing Deputy Benton's affidavit when ruling on appellee's March 17, 2022 motion to suppress, it considered the evidence admitted at the May 20, 2021 hearing on appellee's prior unsuccessful motion to suppress, which included Benton's testimony and the videotaped recording from Benton's body camera. Thus, in determining whether Benton's search warrant affidavit supported the magistrate's finding of probable cause, the trial court strayed beyond the four corners of the affidavit and impermissibly relied on evidence not contained in the affidavit. Appellee concedes as much in his appellee's brief. But according to appellee, the trial court's ruling granting his March 17, 2022 motion to suppress could be sustained based on the legal theory he advanced in his prior, unsuccessful motion to suppress.

In his prior motion to suppress, appellee challenged the truthfulness of certain factual statements made by Deputy Benton in the search warrant affidavit, asserting that the affidavit did not support the magistrate's finding of probable cause. *See*

10

*Franks v. Delaware*, 438 U.S. 154, 171–72 (1978); *Diaz*, 632 S.W.3d at 892. To prevail on that theory, appellee was required to show by a preponderance of the evidence that Benton made an affirmative misrepresentation in his affidavit and the misrepresentation was material and necessary to establishing probable cause. *See Islas v. State*, 562 S.W.3d 191, 196–97 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd); *see also Franks*, 438 U.S. at 155–56. The trial court denied appellee's prior motion to suppress, and we must "give almost total deference to [its] express or implied" findings of fact in support of that ruling. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008).

Further, in its findings of fact supporting its ruling on the March 17, 2022 motion to suppress, the trial court expressly refused to find "whether Deputy Benton [wa]s a reliable and credible witness." Absent an affirmative finding that Benton made a material misstatement with at least reckless disregard for the truth, the record does not support affirmance on the theory urged by appellee in his briefing. *See Franks*, 438 U.S. at 155–56; *Diaz*, 632 S.W.3d at 892. As a result, we conclude that the trial court erred in relying on evidence outside the four corners of Benton's affidavit in determining whether Benton's affidavit provided a substantial basis for magistrate's conclusion that probable cause existed. *See Gates*, 462 U.S. at 238–39; *Diaz*, 632 S.W.3d at 892.

11

As to the State's second issue—whether the trial court gave due deference to the magistrate's probable-cause determination—we note that the trial court based its decision granting appellee's motion to suppress, at least in part, on the Texas Court of Criminal Appeals's decision in *Baldwin*.

*Baldwin* involved the propriety of a search warrant obtained for a defendant's cellular telephone as part of a capital-murder investigation. *See* 664 S.W.3d at 123. In the affidavit supporting the application for the search warrant, the law enforcement officer who had conducted the investigation testified that, based on his training and experience, he knew that cellular telephones were "capable of receiving, sending, or storing electronic data" and may contain evidence of a suspect's identity, as well as that of others. *Id.* at 126. The officer stated that he also knew that it was "possible to capture video and photos" with cellular telephones. *Id.* And from his "training and experience," the officer knew "that cellular telephones [were] commonly utilized to communicate in a variety of ways" and provided "reliable and instant communications." *Id.*

Additionally, in his affidavit, the law enforcement officer explained that "from other cases" that he had investigated, as well as his "training and experience[]," he knew that it was "common for suspects to communicate about their plans via text messaging, phone calls, or through other communication applications" and that "someone who commits the offense of aggravated assault or murder often

makes phone calls and/or text messages immediately prior" to "and after the crime." *Id.* Further, the officer knew that "searching a suspect's phone [would] allow law enforcement officers to learn the cellular telephone number and service provider for the device," which would, in turn, enable officers to "obtain a subsequent search warrant from the cellular telephone provider" for "cell site data records, including any and all available geo-location information for the dates of an offense, which may show the approximate location of a suspect at or near the time of an offense." *Id.* Based on that information, the law enforcement officer "believe[d] that the incoming and outgoing telephone calls, incoming and outgoing text messaging, emails, video recordings and subsequent voicemail messages [on the defendant's cellular telephone] could contain evidence related to" the investigation. *Id.*

The State asserted in *Baldwin* that the law enforcement officer's affidavit supported an implied finding of probable cause because it contained sufficient facts showing that a search of the defendant's cellular telephone "would probably produce evidence of preparation and the identity of the other participant in the murder." *Id.* at 129. The Texas Court of Criminal Appeals disagreed, concluding that the "boilerplate language," like the law enforcement officer's recitation of his general knowledge about cellular telephone data and usage gained from prior criminal investigations, may be included in an affidavit, "but to support probable cause, the language must be coupled with other facts and reasonable inferences that establish a

13

nexus between the device and the offense." *Id.* at 123, 136. In other words, "specific facts connecting the items to be searched to the alleged offense are required for the magistrate to reasonably determine probable cause." *Id.* at 134. Because there were "no facts within the four corners of the affidavit that tie[d] the defendant's cell phone to the offense," the Court of Criminal Appeals held that "the magistrate erred by substituting the evidentiary nexus" required to show probable cause "for the officer's training and experience and generalized belief that suspects plan crimes using their phones." *Id.* at 135.

Here, the trial court characterized Deputy Benton's recitation of his training and experience as "boilerplate." But this characterization is at odds with the Texas Court of Criminal Appeals's observation in *Davis v. State* that the "best practice" for a law enforcement officer executing a probable cause affidavit is to expressly include the officer's experience and background information in the affidavit. 202 S.W.3d 149, 156–57 (Tex. Crim. App. 2006). Further, unlike the affidavit in *Baldwin*, where there was no logical connection between the generalized information about cellular telephone usage by suspects and the specific facts of the investigation at hand, Benton's recitation of his training and experience provided a foundation for the conclusions he drew from his observations about appellee's behavior and appearance when Benton stopped him, which included appellee's driving over the speed limit, his "red, blood shot eyes," a "strong odor of alcoholic

14

beverage coming from [appellee's] breath, [appellee's] slurred speech" and that appellee "swayed while standing."

For these reasons, we conclude that in discounting Deputy Benton's recitation of his training and experience, the trial court erred in failing to defer to the magistrate's implicit determination that Benton's training and experience were adequate to support the inferences and deductions contained in his affidavit. *See, e.g.*, *id.* (trial court properly deferred to magistrate's probable cause determination because, even without recitation of affiant officer's training and experience, magistrate could reasonably have inferred patrol officer had experience in identifying odor of methamphetamine production); *see also Ramirez-Tamayo v. State*, 537 S.W.3d 29, 37 (Tex. Crim. App. 2017) (holding appellate court improperly elevated standard of proof in inquiry about whether law enforcement officer had reasonable suspicion to make lawful stop by requiring extensive details of officer's training and experience; as long as some evidence supported trial court's implied finding that officer was reasonably capable of making rational inferences and deductions by drawing on his own experience and training, State did not have additional burden to include extensive details about officer's experience and training).

As to the State's third issue—whether the trial court erred in concluding that Deputy Benton's search warrant affidavit did not contain sufficient facts establishing

15

probable cause—we note that the Texas Code of Criminal Procedure provides that an "affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested." TEX. CODE CRIM. PROC. ANN. art. 18.01(b); *see also Baldwin*, 664 S.W.3d at 130. And that affidavit must set forth specific facts establishing that a specific offense has been committed, the item to be seized constitutes evidence of the offense or evidence that a particular person committed the offense, and that the item is located at, or on the person, place, or thing to be searched. TEX. CODE CRIM. PROC. ANN. art. 18.01(c); *see also Baldwin*, 664 S.W.3d at 130.

When a magistrate construes a probable cause affidavit, he is permitted to "interpret the affidavit in a non-technical, common-sense manner and may draw reasonable inferences from the facts and circumstances contained within its four corners." *Jordan*, 342 S.W.3d at 569. "Probable cause exists if, under the totality of the circumstances set forth in the affidavit before the magistrate, there is a 'fair probability' that contraband or evidence of a crime will be found in a particular place at the time the warrant is issued." *Jordan*, 342 S.W.3d at 568–69. In our review of the magistrate's determination, we determine whether "the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 569 (internal quotations omitted). And we employ a totality-of-the-circumstances analysis. *Gates*, 462 U.S. at 230–37. The Texas Court of Criminal Appeals has explained:

16

"The issue is not whether there are other facts that could have, or even should have, been included in the affidavit;" instead, "we focus on the combined logical force of the facts that are in the affidavit." *Rodriguez v. State*, 232 S.W.3d 55, 62 (Tex. Crim. App. 2007) (emphasis omitted). And the truthfulness of the factual showing providing probable cause for a warrant does not mean "'truthful[ness]' in the sense that every fact recited in the [search] warrant affidavit is necessarily correct." *Franks*, 438 U.S. at 165. "[S]o long as the magistrate had a substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Gates*, 462 U.S. at 236 (second and third alterations in original) (internal quotations omitted).

A defendant seeking to suppress evidence obtained pursuant to a search warrant has the burden of proving, by a preponderance of the evidence, that the evidence was obtained in violation of his Fourth Amendment rights. *United States v. Wallace*, 885 F.3d 806, 809 (5th Cir. 2018); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

In his March 17, 2022 motion to suppress, appellee argued, without elaboration, that Deputy Benton's search warrant affidavit was "insufficient to justify the issuance of the warrant" because it did not indicate that appellee had lost "the normal use of his mental and physical faculties." The Texas Penal Code defines "[i]ntoxicated" as

17

(A)   not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or

(B)   having an alcohol concentration of 0.08 or more.

TEX. PENAL CODE ANN. § 49.01(2) (internal quotations omitted).  The facts set forth in Benton's affidavit are comparable to other circumstances in which Texas courts have concluded that the law enforcement officer's description of a suspect's appearance and behavior supported the issuance of a warrant.  For example, in *Luckenbach v. State*, the Fourteenth Court of Appeals concluded that under the totality of the circumstances, the magistrate reasonably could have inferred from the law enforcement officer's affidavit that there was a fair probability that evidence showing defendant committed a DWI offense would be found in the defendant's blood where the affidavit stated that defendant was driving the wrong way on a one-way street, had a strong odor of alcohol on his breath and glassy eyes, and refused the officer's requests that he perform field sobriety tests and give a breath sample.  523 S.W.3d 849, 856 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd); *see also Crider v. State*, 607 S.W.3d 305, 306, 308 (Tex. Crim. App. 2020) (extraction of blood for purpose of testing blood alcohol concentration justified by law enforcement officer's observations that defendant "exhibited a strong odor of alcohol, glassy and bloodshot eyes, an unsteady gait, and slow, slurry speech," showed signs of intoxication in horizontal gaze nystagmus test, and refused to

18

submit to other field sobriety testing); *Washington v. State*, No. 14-19-00659-CR, 2020 WL 4760104, at \*6 (Tex. App.—Houston [14th Dist. Aug. 18, 2020, pet. ref'd) (mem. op., not designated for publication) (probable cause to arrest defendant where officer saw appellant driving erratically on automated carwash tracks and noticed defendant's slurred speech, bloodshot eyes, and smell of alcohol coming from car and that defendant stumbled upon exiting car and had difficulty walking and keeping balance); *Foley v. State*, 327 S.W.3d 907, 912 (Tex. App.—Corpus Christi–Edinburg 2010, pet. ref'd) (affidavit sufficient to establish probable cause where law enforcement officer stated defendant smelled strongly of alcohol, had red and glassy eyes, slurred speech, poor balance, and refused to provide breath or blood sample); *Reynolds v. State*, 902 S.W.2d 558, 560 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (finding probable cause to arrest defendant for public intoxication without warrant based on defendant's slurred speech, bloodshot eyes, odor of alcoholic beverage, and unstable balance). Because appellee did not identify with particularity any deficiencies within the four corners of Deputy Benton's affidavit, we conclude that he did not satisfy his burden as the movant to show by a preponderance of the evidence that the search warrant was issued without probable cause.

Based on the foregoing, we hold that the trial court erred in granting appellee's March 17, 2022 motion to suppress.

We sustain the State's first, second, and third issues.

19

## Conclusion

We reverse the order of the trial court and render judgment denying appellee's March 17, 2022 motion to suppress.


Julie Countiss
Justice

Panel consists of Justices Kelly, Hightower, and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).