Opinion filed July 25, 2024



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00145-CR

_____

**DANIEL RAY GARCIA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 106th District Court**
**Gaines County, Texas**
**Trial Court Cause No. 19-5086**

## M E M O R A N D U M   O P I N I O N

The jury convicted Daniel Ray Garcia of aggravated assault against a public servant, a first-degree felony, and assessed his punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. § 22.02(a)(2), (b)(2)(B) (West Supp. 2023). Appellant, appearing pro se, both at trial and on appeal, filed a handwritten brief presenting nineteen

discernible complaints within his four stated issues. After diligently considering and liberally construing his pro se briefing, we will address each of his appellate complaints. To the extent Appellant has attempted to raise issues in his brief other than those addressed in this opinion, including his unsubstantiated claims of corruption and alteration of the record and exhibits, we hold that those issues have been waived as inadequately briefed and we overrule them. *See* TEX. R. APP. P. 38.1(i); *see also Tong v. State*, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 1053 (2001); *Heiselbetz v. State*, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995) ("From appellant's brief, we cannot discern his specific arguments, and we will not brief appellant's case for him."). We affirm the judgment of the trial court.

*Background Facts*

On April 29, 2019, Seagraves Police Officer Matthew Zalewski was on patrol in his marked vehicle. Around 7:00 p.m., he attempted to stop Appellant for speeding through a residential area and a window-tint violation. *See* TEX. TRANSP. CODE ANN. § 547.613(b)(2-a)(13) (West 2022). He had had previous contact with Appellant, had reason to believe that Appellant would be in the Seagraves area, and had previously checked out and confirmed that Appellant had outstanding warrants. Appellant briefly pulled over and rolled down his window but accelerated when Officer Zalewski's patrol vehicle stopped behind him. Officer Zalewski followed Appellant for another block. Appellant stopped again, then sped away when Officer Zalewski told Appellant to put his hands out of the driver's-side window.

Approximately thirty seconds later, Appellant came to a final halt, quickly exited his pickup, and fired at least four gunshots at Officer Zalewski while advancing toward him. Officer Zalewski testified that he noticed three bullet holes in his vehicle window before he realized Appellant was shooting at him. He returned

2

fire and was able to escape.  Appellant shot Officer Zalewski twice in the forearm, twice in the bicep, once in the shoulder, and twice in his bulletproof vest—near his heart and his kidney.

Officer Zalewski radioed for an ambulance as he drove to a safe location and was eventually airlifted to University Medical Center in Lubbock, Texas.  He suffered permanent muscle atrophy, permanent damage in three nerves, the loss of feeling in two fingers, and permanent damage to his neck and back as a result of the shooting.

At trial, the State played the recording from Officer Zalewski's dashcam, which captured the entire incident.  The jury found Appellant guilty of aggravated assault against a public servant and sentenced him to life imprisonment in the Institutional Division of the Texas Department of Criminal Justice.

*Analysis*

*Sufficiency of the Evidence*

In Appellant's nineteenth issue, he asserts that the evidence is insufficient to sustain his conviction, and that he acted in self-defense.  We construe this as a challenge to the sufficiency of the evidence to support the jury's rejection of his self-defense claim.  *See, e.g.*, *Warren v. State*, 430 S.W.2d 215, 216 (Tex. Crim. App. 1968); *Muhammed v. State*, 331 S.W.3d 187, 191 (Tex. App—Houston [14th Dist.] 2011, pet. ref'd).

Self-defense is a fact issue to be determined by the jury, and a jury's verdict of guilt is an implicit finding that it rejected a defendant's self-defense theory. *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991).  For self-defense claims, the defendant has the burden of producing some evidence to support the claim. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *see also Saxton*, 804 S.W.2d at 913–14 (contrasting self-defense from affirmative defenses and

3

explaining how burdens shift for self-defense). If the defendant produces some evidence, the State has "the burden of persuasion to disprove the raised defense." *Zuliani*, 97 S.W.3d at 594. The State's burden does not require the production of any additional evidence; instead, "it requires only that the State prove its case beyond a reasonable doubt." *Id.*; *see Saxton*, 804 S.W.2d at 913. "Because the State bears the burden of persuasion to disprove" a claim of self-defense "by establishing its case beyond a reasonable doubt, we review both legal and factual sufficiency challenges to the jury's rejection of such a defense under" the legal sufficiency standard. *Smith v. State*, 355 S.W.3d 138, 145 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

We review a sufficiency of the evidence issue under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Thus, when reviewing the sufficiency of the evidence to support a conviction involving a claim of self-defense, we review the sufficiency of the evidence to support a jury's rejection of a defendant's self-defense theory by examining all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense and also could have found against the defendant on the self-defense issue beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914 (citing *Jackson*, 443 U.S. 307).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

The State proceeded on the first count of the indictment, which charged Appellant with aggravated assault against a public servant. As applicable to this case, a person commits aggravated assault against a public servant if the person intentionally, knowingly, or recklessly causes bodily injury to a person the actor knows is a public servant while the public servant is lawfully discharging an official duty, and the person uses or exhibits a deadly weapon during the commission of the assault. PENAL §§ 22.01(a)(1), 22.02(a)(2), (b)(2)(B). Appellant has never disputed that he used a firearm, that Officer Zalewski was a police officer acting in his official capacity, or that Officer Zalewski suffered bodily injury. And although Appellant argued at trial that Officer Zalewski's bullet wounds could have been caused by his own gunshots ricocheting off the door of his patrol vehicle, he ultimately admitted to firing his weapon at Officer Zalewski. Therefore, the only sufficiency issue is whether the evidence supports the jury's rejection of Appellant's claim of self-defense. *See Braughton v. State*, 569 S.W.3d 592, 609 (Tex. Crim. App. 2018). We conclude that it does.

5

An individual "is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." PENAL § 9.31(a) (West 2019). Furthermore, an individual "is justified in using deadly force against another . . . if the actor would be justified in using force against the other" and "when and to the degree the actor reasonably believes the deadly force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force." *Id*. § 9.32(a). "'Deadly force' means force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id.* § 9.01(3). A reasonable belief is a belief that would be held by an ordinary and prudent person in the same circumstances as the actor. *Id.* § 1.07(a)(42).

Here, Officer Zalewski's testimony established all the elements of the offense. He told the jury that Appellant shot him multiple times with a firearm, which caused him permanent injuries, while he was wearing his police uniform and driving a marked patrol vehicle. *See* PENAL §§ 1.07(17)(A), 22.02(a)(2), (b)(2)(B). Appellant never expressly admitted to shooting Officer Zalewski, but testified he feared for his life, and "did what [he] did, and [he] protected [his] life in self-defense." The jury also saw Officer Zalewski's dashcam video, which undeniably depicts Appellant shooting in Officer Zalewski's direction. It is undisputed that Appellant used a deadly weapon and fired it at Officer Zalewski.

The only evidence supporting Appellant's self-defense claim was his own testimony. As such, his theory of self-defense was inherently a credibility question for the jury to resolve. The credibility of Appellant's self-defense testimony was solely within the jury's province to determine, and the jurors were free to reject it. *See Saxton*, 804 S.W.2d at 914; *see also Braughton*, 569 S.W.3d at 611–13.

6

In addition to Appellant's assertion that he feared for his life, he said that he heard sirens, and saw "this cop pulling the gun out on me." Officer Zalewski explained that he drew his department-issued firearm during the second momentary stop as he told Appellant to put his hands out the window because Appellant "had possible felony warrants," and "had also evaded" once. And the third time Appellant pulled over and started shooting, Officer Zalewski had not gotten out of his car.

Officer Zalewski's dashcam video corroborates his testimony, which showed Appellant firing several shots within a second after exiting his pickup and before Officer Zalewski's car came to a complete stop. Dimitry Norton, who was in his front yard with his daughters that evening, testified that he saw Appellant "getting out of a pickup with a firearm facing an officer." Based on the record, we conclude the jury could have reasonably found all the elements of aggravated assault against a public servant beyond a reasonable doubt, and that Appellant fired the first shots at Officer Zalewski, thus finding against him on the self-defense issue beyond a reasonable doubt. *See Braughton*, 569 S.W.3d at 609. We overrule Appellant's nineteenth issue.

### Traffic Stop and Arrest Warrant for Attempted Capital Murder

In his first four issues, Appellant challenges the trial court's denial of his motion to suppress. He contests the legality of the traffic stop, and the existence or validity of his outstanding warrants. Appellant further alleges that his arrest warrant and a search warrant were invalid. We will address each issue, beginning with the traffic stop, which is the first issue he sets forth in his brief, and the arrest warrant, his third issue.

"We review a trial court's ruling on a motion to suppress under a bifurcated standard." *State v. Arellano*, 600 S.W.3d 53, 57 (Tex. Crim. App. 2020). "We afford almost total deference to a trial court's findings of historical fact and determinations

7

of mixed questions of law and fact that turn on credibility and demeanor if they are reasonably supported by the record." *Id.* "We review *de novo* a trial court's determination of legal questions and its application of the law to facts that do not turn upon a determination of witness credibility and demeanor." *Id.* "The trial court's ruling will be sustained if it is correct on any applicable theory of law and the record reasonably supports it." *Id.*

When the record is silent as to the reasons for the trial court's ruling, we infer the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). Here, the trial court found only that "legally there was probable cause for the officer to begin the arrest," and denied Appellant's motion to suppress. In our review, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports that finding. *See State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

"An officer may make a warrantless traffic stop if the 'reasonable suspicion' standard is satisfied." *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015). "Reasonable suspicion exists if the officer has 'specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity.'" *Id.* (quoting *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013)). The likelihood of criminal activity required for reasonable suspicion need not rise to the level required for probable cause. *State v. Kerwick*, 393 S.W.3d 270, 273–74 (Tex. Crim. App. 2013). The reasonable-suspicion standard requires only "some minimal level of objective justification" for the stop. *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012) (quoting *Foster v.*

*State*, 326 S.W.3d 609, 614 (Tex. Crim. App. 2010)). This is an objective inquiry that disregards the subjective intent of the officer and looks, instead, to whether an objectively justifiable basis for the detention existed. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011).

An initial computer check that reveals that a vehicle's driver may have outstanding warrants contributes to reasonable suspicion for a traffic stop. *See Gomez v. State*, 234 S.W.3d 696, 701 (Tex. App.—Amarillo 2007, no pet.); *see also Beaudoin v. State*, No. 01-10-00058-CR, 2011 WL 3612285, at *3 (Tex. App.—Houston [1st Dist.] Aug. 18, 2011, no pet.) (mem. op., not designated for publication) ("[T]he police officers' initial computer search revealed one of appellant's outstanding warrants and provided reasonable suspicion for the initial stop.").

At the suppression hearing, Appellant testified that Officer Zalewski had no confirmation for his warrants and could not have known Appellant was driving the pickup; he also argued he did not commit traffic violations. On cross-examination, Appellant admitted to being on community supervision in Gaines County for aggravated assault with a deadly weapon and to having four charges pending in April of 2019. The application to revoke Appellant's community supervision filed on December 14, 2018 and the accompanying arrest warrant were admitted into evidence. Appellant played Officer Zalewski's dashcam video of the traffic stop and introduced Officer Zalewski's written statement that detailed the incident.

According to Officer Zalewski's written statement, he was on routine patrol, and made the following observations leading to his decision to stop Appellant: (1) he perceived a window tint "so dark that [he] could not see the silhouette of anyone inside the pickup"; (2) "the pickup appeared to be speeding"; (3) the registration information on the pickup "returned to a Lamesa, Texas address," and he had

9

information Appellant was living in Lamesa; and (4) he "was aware that [Appellant]" was "a wanted fugitive with multiple felony warrants."

Based on the totality of the circumstances, Officer Zalewski articulated sufficiently specific facts that amounted to reasonable suspicion. *See Jaganathan*, 479 S.W.3d at 247. A police officer's reasonable suspicion to believe that a traffic violation has occurred justifies stopping a vehicle. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018). Here, Appellant could have been stopped on suspicion of speeding alone. *See* TRANSP. § 545.352. Moreover, Officer Zalewski's knowledge of Appellant's outstanding warrants gave him, at the very least, reasonable suspicion to detain and investigate Appellant. *See Haley v. State*, 480 S.W.2d 644, 645 (Tex. Crim. App. 1972) (stating that probable cause "clearly existed" for arrest when warrant check revealed outstanding warrants); *Brooks v. State*, 76 S.W.3d 426, 434 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ("[T]he fact that appellant had several outstanding warrants gave the officers probable cause to arrest him."). Because Officer Zalewski had an objectively justifiable basis for the initial detention, the traffic stop did not violate Appellant's Fourth Amendment protection against unreasonable seizures. *See Derichsweiler*, 348 S.W.3d at 914.

In his third issue, Appellant contends he was arrested without probable cause. For this issue, he points to the date discrepancy between the probable cause affidavit that was signed on April 30, 2019, and the typed date on the arrest warrant that is a day earlier—"the 29th day of April, 2019." Article 15.02 of the Texas Code of Criminal Procedure requires an arrest warrant to: (1) specify the name of the person whose arrest is ordered; (2) state that the person is accused of some offense against the laws of the State, naming the offense; and (3) be signed by a magistrate. TEX. CODE CRIM. PROC. ANN. art. 15.02 (West 2015). The complaint or affidavit in support of the arrest warrant must: (1) state the name of the accused; (2) show that

10

the accused has committed an offense; (3) state the time and place of the commission of the offense; and (4) be signed by the affiant.  CRIM. PROC. art. 15.05.

"[P]urely *technical* discrepancies in dates or times do not automatically vitiate the validity of search or arrest warrants."  *Green v. State*, 799 S.W.2d 756, 759 (Tex. Crim. App. 1990); *see also State v. Baldwin*, 664 S.W.3d 122, 125 n.1 (Tex. Crim. App. 2022); *Arellano*, 600 S.W.3d at 60–61 (holding that a warrant containing an illegible magistrate's signature in violation of Article 18.04(5) does not preclude the application of the statutory good-faith exception in Article 38.23(b)).  When technical defects are at issue, the State can offer explanatory testimony to show the defect is purely technical or clerical.  *Somoza v. State*, 481 S.W.3d 693, 701 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

Appellant first raised this issue during a pretrial conference before a visiting judge and asked the judge to review the warrant and probable cause affidavit.  Upon inspection, the judge found the warrant and affidavit to be "in proper form."  At the suppression hearing, the State offered no explanation for the date discrepancy, but Texas Ranger Terry Eaton confirmed at trial that the typed date on the warrant is "a typo or misprint," and the warrant and probable cause affidavit were signed on April 30, 2019.

Despite the typographical error, the warrant and probable cause affidavit comply with the requirements of Chapter 15 of the Code of Criminal Procedure.  *See* CRIM. PROC. arts. 15.02–.05.  And even had there been a defect, the warrant was facially valid in that it was "on its face . . . issued by a neutral magistrate and . . . supported by probable cause."  *Arellano*, 600 S.W.3d at 60.  Hence, the trial court could have reasonably determined that Ranger Eaton acted in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause when executing Appellant's arrest warrant notwithstanding the typographical error.  *See*

11

CRIM. PROC. art. 38.23(b); *Arellano*, 600 S.W.3d at 60–61; *Dunn v. State*, 951 S.W.2d 478, 479 (Tex. Crim. App. 1997) (finding Article 38.23(b)'s good-faith exception was not automatically precluded when the magistrate inadvertently failed to sign the defendant's arrest warrant). We find no error in the trial court's denial of Appellant's motion to suppress.

*Arrest Warrant on Application to Revoke Community Supervision*

Appellant argues in his second issue that the arrest warrant accompanying the State's application for revocation was invalid based on the timing of its execution and filing. In part, Appellant complains of a warrant form clearly pre-generated with 2018 dates, and ignores the handwritten correction, "2019," on the return of service. Appellant further argues that the warrant was "invalid" due to the return predating its issuance. But he disregards the written detail of the warrant apparent on the face thereof and cites no authority—and we find none—supporting the proposition that the arrest warrant was invalid under these circumstances. *See* TEX. R. APP. P. 38.1(i) (brief must contain "clear and concise" arguments with "appropriate citations to authorities"); *Gonzalez v. State*, 616 S.W.3d 585, 587 (Tex. Crim. App. 2020) (arguments inadequately briefed where appellant merely cited the Sixth and Eighth Amendments and "various Texas constitutional provisions").

Moreover, Appellant did not object to the timing of the arrest warrant before the trial court, thereby failing to preserve this issue for our review. Generally, to preserve a complaint for appellate review, a party must make a contemporaneous request, objection, or motion in the trial court. TEX. R. APP. P. 33.1(a)(1); *see Burg v. State*, 592 S.W.3d 444, 448–49 (Tex. Crim. App. 2020) (citing TEX. R. APP. P. 33.1(a)). Because Appellant did not object to the timing or execution of the arrest warrant when the trial court had the opportunity to make a ruling, he did not preserve this issue for appellate review. We overrule Appellant's second issue.

*Search Warrant*

In Appellant's fourth issue, he challenges the validity of the search warrant for his buccal swabs due to the probable cause affidavit being sworn before a notary in lieu of a judge. Ranger Eaton signed the affidavit, which included a written oath, "before" a notary. *See Clay v. State*, 391 S.W.3d 94, 98–99 (Tex. Crim. App. 2013) ("[T]his Court has held for the better part of a hundred years that, before a written statement in support of a search warrant will constitute a 'sworn affidavit,' the necessary oath must be administered 'before' a magistrate or other qualified officer."); TEX. GOV'T CODE ANN. § 602.002(5) (West Supp. 2023) (authorizing a notary public to administer oaths). However, because the State did not offer evidence obtained by the search warrant at trial, deciding this issue would be rendering an impermissible advisory opinion. *See Dix v. State*, 289 S.W.3d 333, 335 (Tex. App.—Eastland 2009, pet. ref'd) (citing *Morrow v. Corbin*, 62 S.W.2d 641, 644 (Tex. 1933)).

The Texas Rules of Appellate Procedure require courts of appeals to address "every issue raised and necessary to final disposition of the appeal." TEX. R. APP. P. 47.1. An advisory opinion is "one which adjudicates nothing and is binding on no one." *Whitfield v. State*, 430 S.W.3d 405, 421 (Tex. Crim. App. 2014) (Alcala, J., concurring) (internal quotation marks omitted). Deciding an issue that is unnecessary to the disposition of a case is advisory in nature. *Dix*, 289 S.W.3d at 335. Texas courts are without constitutional or statutory authority to render advisory opinions. *Pfeiffer v. State*, 363 S.W.3d 594, 601 (Tex. Crim. App. 2012); *Armstrong v. State*, 805 S.W.2d 791, 794 (Tex. Crim. App. 1991). Because ruling on the validity of the search warrant would have no remedial effect on the outcome of Appellant's case, we decline to do so.

13

Having addressed all dispositive Fourth Amendment issues preserved, we overrule Appellant's first, third, and fourth issues.

*Appointments of Experts*

In Appellant's fifth issue, citing *Ake v. Oklahoma*, 470 U.S. 68 (1985), he contends that the trial court did not appoint an investigator and experts in a timely manner.

When necessary, the State must appoint an expert to aid an indigent defendant; though the State need not "purchase for the indigent defendant all the assistance that his wealthier counterparts might buy," it must provide "the basic tools" to present the defense. *Ex parte Briggs*, 187 S.W.3d 458, 468 n.26 (Tex. Crim. App. 2005) (quoting *Ake*, 470 U.S. at 77). We review a trial court's ruling on an *Ake* motion under an abuse of discretion standard. *Griffith v. State*, 983 S.W.2d 282, 287 (Tex. Crim. App. 1998). The authorization of additional funds is within the sound discretion of the trial court, and there is no abuse of discretion without a showing of some specific need for a particular expert, or how the defendant will be harmed unless the funds are approved. *See Castillo v. State*, 739 S.W.2d 280, 294 (Tex. Crim. App. 1987); *Banks v. State*, No. 11-18-00337-CR, 2020 WL 7863333, at *5 (Tex. App.—Eastland 2020, pet. ref'd). (mem. op., not designated for publication).

Appellant cites to no authority and points to nothing in the record to support his contention. Consequently, this issue is inadequately briefed and unsupported by the record. *See* TEX. R. APP. P. 38.1(i); *Gonzalez*, 616 S.W.3d at 587; *Wolfe v. State*, 509 S.W.3d 325, 342–43 (Tex. Crim. App. 2017) (noting that we have no obligation to make an appellant's argument for him); *Lucio v. State*, 353 S.W.3d 873, 877–78 (Tex. Crim. App. 2011) (finding a point of error inadequately briefed where the brief contains a single-sentence assertion and is unaccompanied by any other argument or authorities); *Murphy v. State*, 112 S.W.3d 592, 596 (Tex. Crim. App. 2003)

("[B]ecause appellant does not argue that the Texas Constitution provides, or should provide, greater or different protection than its federal counterpart, appellant's point of error is inadequately briefed."). In any event, we have independently reviewed the record for an abuse of discretion in this regard, and do not find any.

The record reflects that Appellant requested an investigator on March 25, 2020. On October 29, 2020, the trial court appointed Investigator Jerry Randall. Investigator Randall met with Appellant several times in the Garza County Jail, during which Appellant tasked him with securing the following items: Officer Zalewski's personnel records, "TCLOSE" records, and military file; the City of Seagraves Police Department shooting policy; and the dispatcher's records from the Gaines County Sheriff's Office. Randall told Appellant he would need subpoenas for the requested records, which he never received.

On April 15, 2021, Appellant advised the trial court that Randall retired on March 31, 2021. The trial court appointed another investigator and ordered the State to make any physical evidence available to that investigator for inspection.

On January 20, 2021, Appellant moved for the appointment of a forensic psychologist to assess whether the victim suffered from post-traumatic stress disorder (PTSD) prior to the shooting. On April 15, 2021, the trial court granted Appellant's oral motions for a medical doctor to review records and reports, and for a clinical psychologist to offer an opinion as to PTSD. The trial court signed written orders on June 11, 2021 appointing Dr. Ira Thomas and Dr. Timothy J. Nyberg, and authorizing a $2,000 fee for each.

During trial, on June 17, after the State rested its case-in-chief, Appellant's standby counsel told the trial court that he advised Appellant not to call Dr. Nyberg. Standby counsel further advised that Dr. Thomas requested additional time and funds to continue reviewing records. The trial court approved an additional $500.

15

Counsel assured the trial court that he would arrange a phone conversation between Appellant and Dr. Thomas and advised the trial court that he did not anticipate calling him as a witness. Ultimately, Appellant did not call Dr. Thomas to testify.

Appellant only requested one continuance in connection with calling an expert, stating that he "sent the DVD . . . and [the expert] separated the gunshots . . . he's going to come testify that there's only four on my end and . . . eight or nine of the officer's." Appellant did not provide the expert's name and told the trial court he sent dashcam videos to this expert several months prior to trial. The trial court denied his requested continuance because it "believe[d] this is just an attempt to delay this trial." Based on our review, the trial court took all reasonable measures to ensure that Appellant was appointed investigators and experts, and that he was given adequate time and funds for same. Having evaluated every complaint raised by Appellant involving investigators and experts, we conclude there is no abuse of discretion. Appellant's fifth issue is overruled.

*Jury Selection*

In his sixth, seventh, and eighth issues, Appellant argues various errors that allegedly occurred during jury selection. First, he asserts that his Fourteenth Amendment right to equal protection was violated when the State exercised its peremptory strikes on "all 5 Hispanic persons on the venire." *See* U.S. CONST. AMEND. XIV; *Batson v. Kentucky*, 476 U.S. 79 (1986); *see also* CRIM. PROC. art. 35.261 (West 2006). Second, he avers that Jay Lee Youngblood was erroneously sworn as juror after he was struck. Finally, Appellant submits that the trial court erred in its timing of the jury shuffle.

Appellant did not challenge the State's use of peremptory strikes at trial, thereby failing to preserve error. *See* TEX. R. APP. P. 33.1(a)(1)(A). To preserve error, a defendant must make a timely request, objection, or motion stating the

grounds for his desired ruling with sufficient specificity to make the trial court aware of the claim, unless the specific grounds were apparent from the context. *Id.*; *Hall v. State*, 663 S.W.3d 15, 38 (Tex. Crim. App. 2021). *Batson* error is subject to the same "principles of ordinary procedural default." *Batiste v. State*, 888 S.W.2d 9, 17 n.5 (Tex. Crim. App. 1994). A defendant must call the trial court's attention to the composition of the jury "at some point during the pendency of the trial." *Allen v. State*, 726 S.W.2d 636, 640 (Tex. App.—Eastland 1987), *aff'd*, 769 S.W.2d 563 (Tex. Crim. App. 1989). He must then obtain an express or implied ruling on his objection. *Williams v. State*, 301 S.W.3d 675, 688 (Tex. Crim. App. 2009). Here, Appellant's failure to timely object to the composition of the jury bars review of the alleged *Batson* error. *See id.*; TEX. R. APP. P. 33.1; *Allen*, 726 S.W.2d at 640.

With respect to Appellant's complaint regarding juror Jay Lee Youngblood, we likewise conclude there is no error. The State did not use one of its peremptory strikes on Youngblood. In compliance with Article 35.26(a) of the Code of Criminal Procedure, the State wrote "S#1" through "S#10" next to ten venire members, not including Youngblood. *See* CRIM. PROC. art. 35.26(a). Next to Youngblood's name was an indiscernible, scratched out notation. Whether the prosecution mistakenly indicated a strike next to his name, or initially intended to strike him and reconsidered, the State struck a total of ten venire members. The logical conclusion is that Youngblood was not struck.

Appellant next contests the timing of the jury shuffle. The right to a jury shuffle is statutory in nature. *See* CRIM. PROC. art. 35.11 (requiring the seating order of the venire to be randomly shuffled at the request of either party); *Davis v. State*, 782 S.W.2d 211, 214 (Tex. Crim. App. 1989). While the jury shuffle may be used as a strategic tool, its purpose is to ensure the venire members are listed in random order. *Ford v. State*, 73 S.W.3d 923, 926 (Tex. Crim. App. 2002). Here, the trial

court granted Appellant's request for a jury shuffle during a pretrial hearing, then directed the clerk to compile the list of venire members, shuffle them, then seat the venire panel as shuffled. *See* CRIM. PROC. art. 35.11. Because the trial court ordered the venire shuffled prior to the State's questioning of the panel, we conclude that Article 35.11 was satisfied. *See Mays v. State*, 726 S.W.2d 937, 947 (Tex. Crim. App. 1986). We overrule Appellant's sixth, seventh, and eighth issues.

*Admissibility of Officer Zalewski's Personnel Records*

In his ninth issue, Appellant asserts that the trial court should have permitted him to introduce Officer Zalewski's personnel records. We review a trial court's ruling on admissibility of evidence for an abuse of discretion.[1] *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). An evidentiary ruling will be upheld on appeal if it is within the zone of reasonable disagreement and is correct on any theory of law that finds support in the record. *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006); *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001); *Dering v. State*, 465 S.W.3d 668, 670–71 (Tex. App.—Eastland 2015, no pet.).

The Sixth Amendment right to cross-examine a witness allows a party to attack the general credibility of that witness or to show their possible bias, self-interest, or motives in testifying. *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009); *see Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001) ("A defendant has a fundamental right to present evidence of a defense as long as the evidence is relevant and is not excluded by an established evidentiary rule."). A

---

[1]Appellant does not claim that his rights to confrontation and to present a defense were violated and he did not object to a Confrontation Clause violation at trial. *See Golliday v. State*, 560 S.W.3d 664, 669 (Tex. Crim. App. 2018) (citing *Reyna v. State*, 168 S.W.3d 173 (Tex. Crim. App. 2005) (a defendant must put the trial judge on notice that he is making a Confrontation Clause argument to preserve error for appellate review)).

defendant may elicit, on cross-examination, facts intended to show a witness's bias without undue limitation or arbitrary prohibition. TEX. R. EVID. 613(b); *Jones v. State*, 571 S.W.3d 764, 769–70 (Tex. Crim. App. 2019).

However, a defendant does not have "an absolute constitutional right to impeach the general credibility of a witness in any fashion that he chooses." *Hammer*, 296 S.W.3d at 562 (citing *Davis v. Alaska*, 415 U.S. 308, 316 (1974)). A trial judge retains the discretion to impose reasonable limits on such cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, marginally relevant evidence, or when the subject of the examination has been exhausted. *Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). Rule 608(b) of the Texas Rules of Evidence provides that "a party may not inquire into or offer extrinsic evidence to prove specific instances of the witness's conduct in order to attack or support the witness's character for truthfulness." TEX. R. EVID. 608(b). This rule has been specifically applied to exclude evidence of the disciplinary history of police officers. *Baldez v. State*, 386 S.W.3d 324, 328 (Tex. App.—San Antonio 2012, no pet.); *Dalbosco v. State*, 978 S.W.2d 236, 238–39 (Tex. App.—Texarkana 1998, pet. ref'd).

Appellant contends he was erroneously prohibited from using Officer Zalewski's personnel file, including his disciplinary history, during cross-examination. Although Appellant refers to this information as "exculpatory evidence," it is a disciplinary record from an incident in 2018 that resulted in Officer Zalewski being placed on "probationary status" for 180 days. Given that Appellant was captured on video firing multiple shots at Officer Zalewski, the resolution of this case came down to whether the jury believed Appellant's self-defense theory. Appellant was not involved in the 2018 incident and knew nothing of Officer

Zalewski's reputation or disciplinary history prior to the shooting. The records likewise revealed no credibility issues that Appellant could have used to properly impeach Officer Zalewski. We conclude Appellant had no purpose for offering the personnel file other than to improperly use specific instances of conduct to attack Officer Zalewski's character for truthfulness. *See* TEX. R. EVID. 608(b). Accordingly, the trial court acted within its discretion by excluding the proffered records and information therefrom.

Nevertheless, applying the harm factors from *Van Arsdall*, any error in excluding this evidence was harmless beyond a reasonable doubt.[2] In addition to Officer Zalewski's testimony, the jury saw the dashcam video of Appellant exiting his vehicle and immediately firing several gunshots at Officer Zalewski. Appellant was permitted to cross-examine Officer Zalewski about the traffic stop, the validity of his outstanding warrants, and was given latitude when accusing Officer Zalewski of "racial profiling." He introduced Officer Zalewski's statement, discussed his medical records, and repeatedly asked whether he had been diagnosed with PTSD prior to the shooting. After considering the *Van Arsdall* factors, we conclude that any potential error in excluding Officer Zalewski's disciplinary record was harmless beyond a reasonable doubt. *See Jones*, 571 S.W.3d at 770–71. We overrule Appellant's ninth issue.

---

[2]*See Van Arsdall*, 475 U.S. at 684 ("The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.").

*Brady Claim*

Appellant contends in his tenth issue that the State withheld evidence. Although Appellant makes several accusations about the State, the police, the trial court, and the court reporter withholding or altering evidence, he has identified nothing with sufficient specificity other than Officer Zalewski's purportedly missing bodycam footage. The State has consistently maintained that the evidence of which Appellant complains never existed.

"Article 39.14(h) places upon the State a free-standing duty to disclose all 'exculpatory, impeaching, and mitigating' evidence to the defense that tends to negate guilt or reduce punishment." *Watkins v. State*, 619 S.W.3d 265, 277 (Tex. Crim. App. 2021). "[T]his duty to disclose is much broader than the prosecutor's duty to disclose as a matter of due process under *Brady v. Maryland*." *Id.* (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). But that duty does not extend to "create[ing] or generat[ing] evidence that does not otherwise exist." *In re State ex rel. Best*, 616 S.W.3d 594, 600 (Tex. Crim. App. 2021).

Officer Zalewski told Appellant during cross-examination that his bodycam was not activated during the shooting because it was on the charging cradle in his vehicle. Gaines County Sheriff Chief Deputy Clint Low confirmed that Officer Zalewski's bodycam footage did not exist. Ranger Eaton explained that he tried to download Officer Zalewski's bodycam footage, but "there was nothing on it" because it "did not record anything."

Neither *Brady*, its progeny, nor Article 39.14 require prosecuting authorities to create information that does not exist. *In re Harris*, 491 S.W.3d 332, 336 (Tex. Crim. App. 2016); *In re State ex rel. Munk*, 448 S.W.3d 687, 692 (Tex. App.—Eastland 2014, no pet.). We have found nothing to substantiate Appellant's

21

contention that evidence existed beyond what was provided to him during discovery. We overrule Appellant's tenth issue.

*Exclusion of Witnesses*

In his eleventh issue, Appellant asserts that the trial court erred when it did not require the attendance of Chief Brent Grundstrom and Luis Pinon to testify in his defense. We review an alleged violation of an evidentiary rule and the right to compulsory process for an abuse of discretion. *Kinnett v. State*, 623 S.W.3d 876, 902 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd).

After Appellant called eighteen witnesses, the trial court inquired about the materiality of his remaining witnesses. Appellant proffered that he intended to question Luis Pinon about picking up shell casings from the crime scene, and why the police have not arrested him for tampering with evidence. The trial court expressed its approval to call Luis Pinon. However, after Appellant finished questioning his twenty-third witness, Silberio Pinon, he told the trial court: "I don't have no—Luis Pinon, but you said . . . he didn't have to be here." Without witnesses ready, Appellant rested his case and did so without calling Luis Pinon.

Our federal and state laws give the trial court great discretion in conducting and managing trial. *See Barron v. State*, 630 S.W.3d 392, 408 (Tex. App.—Eastland 2021, pet. ref'd). For example, both the United States and Texas constitutions provide a criminal defendant with the right to compulsory process for obtaining witnesses in his favor but do not guarantee the right to secure the testimony of any and all witnesses. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *Coleman v. State*, 966 S.W.2d 525, 527 (Tex. Crim. App. 1998). Rather, compulsory process is guaranteed for obtaining witnesses whose testimony would be both material and favorable to the defense. *Coleman*, 966 S.W.2d at 527–28. "Evidence is material if it has some logical connection to a consequential fact . . . [as] determined by

22

evaluating its relation to a particular subject matter rather than its impact upon the overall determination of guilt or punishment in light of the evidence introduced at trial." *Watkins*, 619 S.W.3d at 269 (internal quotation marks omitted).

Additionally, the Texas Rules of Evidence charge the trial court with exercising "reasonable control over the mode and order of examining witnesses and presenting evidence" to make the procedures "effective for determining the truth," "avoid wasting time," and "protect[ing] witnesses from harassment or undue embarrassment." TEX. R. EVID. 611(a). And the trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of "needlessly presenting cumulative evidence." TEX. R. EVID. 403.

Appellant called twenty-three witnesses and he filed applications for 123 subpoenas. Ranger Eaton attested that he got shell casings from Luis Pinon, who admitted to taking them from the crime scene. Silberio Pinon testified that he was there when police went to Luis Pinon's house to retrieve shell casings five days after the shooting. Through these witnesses, Appellant elicited evidence that Luis Pinon took the shell casings from the crime scene and returned them to police five days after the shooting. The trial court, therefore, did not abuse its discretion in refusing to allow Appellant an additional day to call Luis Pinon.

Furthermore, despite the lack of apparent connection to his self-defense theory, the trial court gave Appellant wide latitude in calling witnesses. Its decision to conclude trial after Appellant's last available witness was a reasonable exercise of its control over the mode and order of trial. *See* TEX. R. EVID. 611(a). And whether the witness's testimony was cumulative, and a waste of time, was within the zone of reasonable disagreement. *See id.* R. 403.

With respect to Chief Grundstrom, Appellant intended to elicit testimony about Officer Zalewski's disciplinary record. After the trial court reiterated that

23

Officer Zalewski's professional discipline history was not admissible, Appellant argued Chief Grundstrom's testimony was material because he "said . . . when he got there, the door of my truck was open . . . that's not true." Appellant fails to explain how this has any logical connection to a consequential fact or his self-defense theory. *See Watkins*, 619 S.W.3d at 269. On this record, we cannot say the trial court abused its discretion in prohibiting Appellant from calling Chief Grundstrom as a witness. We overrule Appellant's eleventh issue.

*Alleged Perjured Testimony*

Appellant contends in his twelfth issue that he was convicted based on Officer Zalewski's and Ranger Eaton's perjured testimony. Appellant again points to the nonexistent bodycam footage, and a video that he requested in connection with two shell casings found by "the Texas Rangers and K9 dog." Appellant further avers that Officer Zalewski lied in "his written statement" about the traffic stop, and that both he and Ranger Eaton lied about his bodycam charging.

"[T]he use of material false evidence to procure a conviction violates a defendant's due-process rights under the Fifth and Fourteenth Amendments to the United States Constitution." *Ex parte De La Cruz*, 466 S.W.3d 855, 866 (Tex. Crim. App. 2015). "[T]he relevant question is whether the testimony, taken as a whole, gives the jury a false impression." *Id.*; *see Ex parte Chaney*, 563 S.W.3d 239, 263 (Tex. Crim. App. 2018). "It is axiomatic that a due process claim based on false evidence requires the defendant to prove first and foremost that the evidence was actually false." *Ukwuachu v. State*, 613 S.W.3d 149, 150 (Tex. Crim. App. 2020). To meet this burden, a defendant must identify "some credible evidence that clearly undermines the evidence adduced at trial." *Id.* at 156. The evidence of falsity must be "definitive or highly persuasive." *Id.* at 157. If the defendant successfully establishes that false evidence was presented at his trial, he must also show the false

evidence was material to his conviction. *Ex parte De La Cruz*, 466 S.W.3d at 866. "[A] false statement is material only if there is a reasonable likelihood that the false testimony affected the judgment of the jury." *Ex parte Weinstein*, 421 S.W.3d 656, 665 (Tex. Crim. App. 2014).

Appellant cross-examined Ranger Eaton and Officer Zalewski about the bodycam footage, and the reasons for the traffic stop. Appellant also questioned Ranger Eaton about the shell casings found at the crime scene. He fails to identify "some credible evidence that clearly undermines the evidence adduced at trial." *Ukwuachu*, 613 S.W.3d at 156. To the extent there were inconsistencies or conflicts in the evidence presented to the jury, we "owe[] deference to the jury's determination with respect to the weight and credibility of the evidence." *Ex parte De La Cruz*, 466 S.W.3d at 870–71. We may not circumvent the jury's role in assessing the witnesses' credibility, and resolving the inconsistencies presented. *Id.* at 867. Because Appellant has not proved that the complained-of testimony was actually false, we overrule his twelfth issue. *See Ukwuachu*, 613 S.W.3d at 150.

*Arraignment*

Appellant argues in his thirteenth issue that the trial court erred by failing to arraign him. He acknowledges he waived arraignment but contends that it was because his first attorney "lied to him."

Appellant told the trial court during a pretrial hearing that he has "never been arraigned." The trial court advised him that he signed a waiver of arraignment when he was represented by counsel. Appellant insisted that he did not intelligently and knowingly waive arraignment, and that is why he fired his first attorney. However, he later admitted that he and his attorney had a disagreement over discovery and other matters. The trial court found that Appellant's waiver of arraignment was valid.

25

"In all felony cases, after indictment . . . there shall be an arraignment," unless waived, for the purpose of "fixing [the accused's] identity and hearing his plea." CRIM. PROC. art. 26.01–02 (West 2009). The record reflects that Appellant was arrested and booked into jail on May 4, 2019. A Gaines County grand jury returned an indictment against Appellant on July 18, 2019, and Appellant's counsel filed a waiver of arraignment on September 10, 2019.

Article 26.011 authorizes the waiver of arraignment by a defendant's attorney. CRIM. PROC. art. 26.011. The record does not support Appellant's claim that he involuntarily waived arraignment, and the law permitted his counsel to do so for him. We overrule Appellant's thirteenth issue.

*Motion to Quash*

Appellant adds a fourteenth issue to his second point of error in his fourth supplemental brief, challenging the trial court's denial of his motion to quash the indictment. The indictment charged Appellant with one count of aggravated assault against a public servant and a second count of attempted capital murder. Appellant filed a motion to sever and try each count separately, which the trial court denied. He filed a motion to quash the indictment, which the trial court also denied.

Both the United States and the Texas constitutions provide that a criminal defendant has the right to notice of the charges brought against him. U.S. CONST. amend. VI; TEX. CONST. art I, § 10; *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004). The charging instrument—in this case, the indictment—must be specific enough to inform the accused of the nature of the accusation against him so that he may prepare a defense. *Moff*, 154 S.W.3d at 601; *see State v. Barbernell*, 257 S.W.3d 248, 250 (Tex. Crim. App. 2008).

Appellant asserts that the trial court should have "force[d] the State to elect the count it would proceed under." We first note that we find no error in the trial

court's denial of Appellant's motion to quash. A defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode. PENAL § 3.02(a) (West 2021). Additionally, "[t]wo or more offenses may be joined in a single indictment, . . . with each offense stated in a separate count, if the offenses arise out of the same criminal episode." CRIM. PROC. art. 21.24.

However, because the State only proceeded on Count One of the indictment, Appellant's complaint is moot. *See Hernandez v. State*, No. 14-95-00003-CR, 1996 WL 11233, at *2 (Tex. App.—Houston Jan. 11, 1996, no pet.). Appellant does not direct our attention to any deficiencies in the charging language itself, only that the State should have been required to elect. Because the State waived the second count, we overrule Appellant's fourteenth issue as moot.

*Change of Venue*

In Appellant's fifteenth issue, he claims that the trial court erroneously denied his motion to change venue. We review a trial court's ruling on a motion for change of venue for an abuse of discretion. *Tracy v. State*, 597 S.W.3d 502, 509–10 (Tex. Crim. App. 2020).

A change of venue may be granted on the written motion of the defendant for the following reasons:

> (1) that there exists in the county where the prosecution is commenced so great a prejudice against him that he cannot obtain a fair and impartial trial; and

> (2) that there is a dangerous combination against him instigated by influential persons, by reason of which he cannot expect a fair trial.

CRIM. PROC. art. 31.03(a). A defendant's written motion must be supported by his own affidavit and the affidavits of at least two credible residents of the county where the prosecution is instituted. *Id.*

The primary purpose of a change of venue is to ensure a defendant's ability to obtain a fair and impartial trial from the members of the community from which the jury will be selected. *See Tracy*, 597 S.W.3d at 509 ("A defendant must demonstrate 'an actual, identifiable prejudice attributable to pretrial publicity on the part of the community from which members of the jury will come.'") (quoting *DeBlanc v.State*, 799 S.W.2d 701, 704 (Tex. Crim. App. 1990)); *see also Ryser v. State*, 453 S.W.3d 17, 33 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) ("Change of venue is a remedy designed to ensure the defendant a fair trial when extensive news coverage has raised substantial doubts about the effectiveness of voir dire for obtaining an impartial jury.") (citing *Beets v. State*, 767 S.W.2d 711, 742–43 (Tex. Crim. App. 1987)).

Appellant attached his own affidavit to his motion to change venue in which he asserted, without supporting facts or affidavits from two other credible residents, that "the prejudice is so great against [him]." At the motion hearing, Appellant cited the sources of prejudice as the trial court and the District Attorney's Office, rather than the community from which jurors would be selected.[3] Appellant thus failed to carry his burden to show that pervasive, prejudicial, and inflammatory publicity would prevent him from obtaining a fair trial by an impartial jury. *See Tracy*, 597 S.W.3d at 509, 511; *Colone v. State*, 573 S.W.3d 249, 257 (Tex. Crim. App. 2019). We overrule Appellant's fifteenth issue.

---

[3]Appellant filed a motion to recuse the Honorable Reed Filley, the presiding judge of the 106th District Court of Gaines, County Texas, on January 15, 2021, and a motion to disqualify him on February 10, 2021. Judge Dean Rucker, the Presiding Judge of the Seventh Administrative Judicial Region at the time, assigned the Honorable John L. Pool, the presiding judge of the 109th District Court, to hear and rule on both motions. Judge Pool denied Appellant's motion to recuse, and Appellant does not challenge this ruling on appeal.

*Speedy Trial*

In his sixteenth issue, Appellant alleges that his right to a speedy trial was violated. The Sixth Amendment to the United States Constitution guarantees the accused in a criminal prosecution the right to a speedy trial. U.S. CONST. amend.VI; *State v. Lopez*, 631 S.W.3d 107, 113 (Tex. Crim. App. 2021). The Texas constitution provides the same guarantee. TEX. CONST. art. I, § 10. "[A]n evaluation of a speedy trial claim includes a consideration of the length of delay, the reasons for delay, to what extent the defendant has asserted his right, and any prejudice suffered by the defendant." *Lopez*, 631 S.W.3d at 113 (internal quotation marks omitted) (citing *Barker v. Wingo*, 407 U.S. 514, 530–32 (1972)). "The length of the delay is, to some extent, a triggering mechanism, so that a speedy trial claim will not even be heard until passage of a period of time that is, on its face, unreasonable in the circumstances." *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003).

"We apply a bifurcated standard of review: an abuse of discretion standard for the factual components and a *de novo* standard for the legal components." *Lopez*, 631 S.W.3d at 113–14. "To be clear, while an evaluation of the *Barker* factors includes fact determinations and legal conclusions, the balancing test as a whole is a purely legal question that we review *de novo*." *Id.* (internal quotation marks omitted).

1. *Length of Delay*

"To trigger a speedy trial analysis, the defendant must make an initial showing that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay." *State v. Conatser*, 645 S.W.3d 925, 929 (Tex. App.—Dallas 2022, no pet.) (quoting *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014)); *Doggett v. United States*, 505 U.S. 647, 651–52 (1992). We measure the length of delay from the time the accused is arrested or

29

formally accused.  *Gonzales*, 435 S.W.3d at 809 (citing *United States v. Marion*, 404 U.S. 307, 313 (1971)).  There is no set or defined period of time that has been held to be a *per se* violation of a defendant's right to a speedy trial under the Sixth Amendment.  *Barker*, 407 U.S. at 530; *Cantu v. State*, 253 S.W.3d 273, 280–81 (Tex. Crim. App. 2008).  Alleged violations are considered on a case-by-case basis, and each case is considered on its own merits.  *Barker*, 407 U.S. at 529–30.  For example, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."  *Id.* at 531.

Here, Appellant was arrested on May 4, 2019.  He was formally charged on July 18, 2019, and his trial began on June 14, 2021.  Nearly twenty-six months between his arrest and commencement of trial is considered "presumptively prejudicial," and triggers consideration of the remaining *Barker* factors.  *Id.* at 530; *Cantu*, 253 S.W.3d at 281.

2. *Reasons for Delay*

We do not attribute equal weight to all reasons for delay: an intentional delay for tactical reasons is weighed heavily against the State; a neutral reason, such as overcrowded courts or negligence, is weighed less heavily against the State; and a valid reason is not weighed against the State at all.  *State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999); *Conatser*, 645 S.W.3d at 929.

Appellant was formally charged on July 18, 2019, just over two months after his arrest.  On February 20, 2020, the trial court granted his "request for a speedy trial and special setting," and set his trial for March 30, 2020.  Appellant filed a motion for continuance on February 26, 2020, which the trial court granted.  Appellant filed another motion for speedy trial on November 17, 2020, again on January 20, 2021, and a motion for a dismissal due to a denial of his right to a speedy

trial on March 16, 2021. At a remote hearing on January 7, 2021, the trial court sua sponte took judicial notice of certain facts, including:

> Beginning [o]n March 13th, 2020, the Texas Supreme Court and the Court of Criminal Appeals have issued multiple emergency orders. Several of those orders have suspended jury trials in both civil and criminal matters. Beginning [i]n October 2020, the suspensions were lifted and in-person jury trials were once again allowed without restrictions. . . . [T]his case was scheduled for a jury trial to begin on December 1st, 2020. . . . Due to the increase in Covid-19 numbers in Gaines County, Texas, in mid-November of 2020, this Court made the decision to cancel the jury trial which was scheduled for December 1st, 2020. . . . [T]his court has not conducted any jury trials since [Appellant]'s Motion for Continuance was granted.

The months of March through November of 2020 "were dominated by the unforeseeable initial impact of the Covid-19 pandemic." *Conatser*, 645 S.W.3d at 930; *see, e.g.*, *Thirty-Third Emergency Order Regarding the Covid-19 State of Disaster*, 629 S.W.3d 179, 180 (Tex. 2021). The trial court explained it "has not conducted any jury trials since . . . February 26th, 2020."

We acknowledge the Texas Supreme Court's emergency orders do "not supersede constitutional mandates," and "a state of disaster alone cannot indefinitely pretermit enjoyment of the speedy trial right." *Lovelace v. State*, 654 S.W.3d 42, 49 (Tex. App.—Amarillo 2022, no pet.) (internal quotation marks omitted). But we agree with our sister court that "[d]elay caused by the onset of a pandemic cannot be attributed as fault to the State." *Conatser*, 645 S.W.3d at 930; *see Schuman v. State*, No. 11-22-00300-CR, 2024 WL 847692, at *9 (Tex. App.—Eastland Feb. 29, 2024, pet. ref'd) (mem. op., not designated for publication). There is also no evidence that the State deliberately delayed Appellant's trial for strategic gain. *Schuman*, 2024 WL 84769, at *10. We find this *Barker* factor weighs against neither the State nor Appellant. *See id.*

### 3. *Assertion of the Right*

The third *Barker* factor examines the defendant's assertion of his right to a speedy trial. As set forth above, Appellant filed his "request for speedy trial and special setting" on January 1, 2020, and his trial was set for March 30, 2020. The trial court granted his motion for a continuance that he filed in February of 2020, and the pandemic prevented in-person jury trials for several months thereafter. *See Thirty-Third Emergency Order Regarding the Covid-19 State of Disaster*, 629 S.W.3d at 180. Appellant filed three more motions asserting his right to a speedy trial.

On April 15, 2021, the trial court advised Appellant that his case was set for trial on June 14, 2021. At that hearing, Appellant asked for a continuance for expert appointments, and agreed to waive his right to a speedy trial. The trial court denied his continuance and appointed experts as requested.

It is clear that Appellant wanted a trial, but only after interviewing every witness, receiving every item of discovery no fewer than three separate times, attempting to recuse the trial judge, and getting released on bond. A defendant may not use his rights "to manipulate the court" or "jack the system around." *Huggins v. State*, 674 S.W.3d 538, 549 (Tex. Crim. App. 2023). Appellant undoubtedly asserted his right to speedy trial, but simultaneously requested more time and access to witnesses and evidence—despite multiple rulings by the trial court that he had received everything in the State's possession. Although Appellant asserted his right to speedy trial on multiple occasions, he contradicted his expressed desire to go to trial by complaining that he could not mount a defense without more resources and a bond reduction. Balancing Appellant's vehement assertion of his right with his incongruous requests for more time, this factor weighs only slightly against the State.

32

### 4. *Prejudice*

The defendant has the burden of showing prejudice. *Cantu*, 253 S.W.3d at 280. We assess this factor in light of the three interests the right to a speedy trial is intended to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Hopper v. State*, 520 S.W.3d 915, 924 (Tex. Crim. App. 2017).

Appellant has failed to identify any significant prejudice caused by the delay in bringing him to trial. *See id*. Throughout his numerous pretrial hearings and in his brief to this court, Appellant protested his lack of access to experts, evidence for inspection, witnesses to conduct interviews, and the law. He complained that he could not prepare a defense from jail and did not have the education and resources of an attorney. He now asserts he suffered anxiety.

We note that Appellant's pro se status does not entitle him to leniency or special consideration. *See Osorio-Lopez v. State*, 663 S.W.3d 750, 757 (Tex. Crim. App. 2022). Additionally, "evidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation." *Cantu*, 253 S.W.3d at 286. From jail, Appellant was able to mount a defense that included calling twenty-three witnesses. He does not argue that any witnesses suffered memory loss or disappeared as a result of the time lapse between his arrest and trial. Nothing indicates his defense was impaired by the pretrial delay. *See Hopper*, 520 S.W.3d at 924. Further, while most of Appellant's complaints of prejudice understandably arose from his confinement, there is no evidence that his pretrial incarceration was "oppressive." *Id.* Finding no prejudice caused by the delay, this factor weighs against a finding that Appellant's right to a speedy trial was violated.

Application of the *Barker* factors shows that the reason for the delay is neutral, the third factor weighs slightly in favor of Appellant, but the fourth factor weighs heavily against him. Despite the nearly twenty-six-month delay, weighing the *Barker* factors leads us to conclude that Appellant's right to a speedy trial was not violated. *See Barker*, 407 U.S. at 530; *Cantu*, 253 S.W.3d at 280. Therefore, the trial court did not err in denying Appellant's motion to dismiss for violation of his right to a speedy trial. We overrule Appellant's sixteenth issue.

*Standby Counsel*

Appellant argues in his seventeenth issue that the trial court "forced" standby counsel on him during trial. He does not contend the trial court erred by allowing him to represent himself, nor that he unknowingly or involuntarily waived his right to counsel. He instead makes a myriad of accusations against his standby counsel, none of which are supported by the record.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." *See* U.S. CONST. amend. VI.; TEX. CONST. art. I § 10; *Faretta v. California*, 422 U.S. 806, 807 (1975); *Osorio-Lopez*, 663 S.W.3d at 756. "Concomitant with the right to counsel is the right to waive counsel and to represent one's self" after a knowing and intelligent waiver of the right to counsel. *Hatten v. State*, 71 S.W.3d 332, 333 (Tex. Crim. App. 2002); *see Osorio-Lopez*, 663 S.W.3d at 756.

The trial court may appoint standby counsel—even over the defendant's objection—to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals. *McKaskle v. Wiggins*, 465 U.S. 168, 184 (1984) (citing *Faretta*, 422 U.S. at 834 n.46); *Scarbrough v. State*, 777 S.W.2d 83, 92 (Tex. Crim. App.

34

1989) ("participation of standby counsel does not infringe upon *Faretta*'s guarantee of self-representation and may even be imposed upon the accused"); *Shook v. State*, 649 S.W.3d 823, 824 (Tex. App.—Waco 2022, pet. ref'd) ("trial court can appoint standby counsel to assist a criminal defendant who represents himself at trial, even over the defendant's objection").

Despite Appellant's proclamation that he did not want standby counsel, Appellant consulted with him on several matters throughout pretrial hearings and trial. Moreover, because indigent defendants do not have the right to the appointed counsel of their choosing, it is logical to conclude that an indigent defendant who has invoked his right to self-representation does not have the right to choose his appointed standby counsel. *See Stearnes v. Clinton*, 780 S.W.2d 216, 221 (Tex. Crim. App. 1989). We therefore find no error in the trial court's appointment of standby counsel over Appellant's objection. We overrule Appellant's seventeenth issue.

*Excessive Bail*

Appellant contends in his eighteenth issue that his $750,000 pretrial bail was excessive, in violation of the Eighth Amendment.[4] Appellant filed several motions to reduce his bond, all of which were denied. "A trial court's ruling setting the amount of bail is reviewed for an abuse of discretion." *Ex parte Gomez*, 624 S.W.3d 573, 576 (Tex. Crim. App. 2021). "The burden of proof is on the defendant to show that bail is excessive." *Id.*

---

[4]Appellant has not cited, nor have we found, authority to the effect that a claim of excessive pretrial bail is cognizable after trial has occurred. In a similar situation we concluded that a challenge to the amount of bail is moot when the appellant is no longer confined by virtue of the allegedly excessive pre-trial bail amount. *See Reynolds v. State*, No. 11-05-00096-CR, 2006 WL 648331, at *2 (Tex. App.—Eastland Mar. 16, 2006, no pet.) (not designated for publication).

35

The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. This provision applies to the states by the Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 675 (1962). Bail is excessive if it is in an amount greater than is reasonably necessary to satisfy the government's legitimate interests. *See* U.S. CONST. amend. VIII; TEX. CONST. art. I, § 13; *Chavez v. State*, 671 S.W.3d 775, 785 (Tex. App.—Fort Worth 2023, no pet.). "The government's primary interest, and bail's primary purpose, is to provide a reasonable assurance of the defendant's presence at trial." *Chavez*, 671 S.W.3d at 785; *see* CRIM. PROC. art. 17.01; *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977).

In setting bail, a trial court is "governed by the Constitution and the following" statutory guidelines:

1. Bail and any conditions of bail shall be sufficient to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be used to make bail an instrument of oppression.

3. The nature of the offense and the circumstances under which the offense was committed are to be considered, including whether the offense:

(A) is an offense involving violence as defined by Article 17.03; or

(B) involves violence directed against a peace officer.

4. The ability to make bail shall be considered, and proof may be taken on this point.

5. The future safety of a victim of the alleged offense, law enforcement, and the community shall be considered.

6. The criminal history record information for the defendant . . . shall be considered, including any acts of family violence, other

pending criminal charges, and any instances in which the defendant failed to appear in court following release on bail.

7. The citizenship status of the defendant shall be considered.

CRIM. PROC. art. 17.15(a) (West 2022). The Court of Criminal Appeals has identified other factors to be considered as well, including the defendant's work record, his family ties, and his length of residency. *See Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim. App. [Panel Op.] 1981) (listing many factors reflected in the current version of Article 17.15).

Here, Appellant failed to carry his burden to show $750,000 was unnecessary to satisfy the government's legitimate interests. "The nature of the defendant's alleged offense and the length of his potential sentence are the 'primary factors' we consider in evaluating a bail decision." *Chavez*, 671 S.W.3d at 785–86; *see* CRIM. PROC. art. 17.15(a)(3); *Ex parte Rubac*, 611 S.W.2d at 849. In reviewing the nature of the offense, courts must necessarily consider the potential punishment permitted under the law. *See Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980).

The nature of Appellant's offense indicates a brazen, violent act committed in a public place against a public servant. Appellant was charged with two first-degree felony offenses—aggravated assault against a public servant and attempted capital murder—based on a violent, public attempt to shoot a police officer in full uniform and a marked patrol vehicle who was conducting a traffic stop. *See* PENAL §§ 15.01, 19.03(a)(1), 22.02(b)(2)(B). The punishment range for each count was five to ninety-nine years or life in prison. *Id.* § 12.32.

Not only was the alleged offense brazen, and the potential punishment lengthy, but Appellant had already shown that he was a flight risk. The State provided evidence that, at the time of the offense, Appellant had five outstanding

warrants, including one for a motion to revoke his community supervision issued at least four months prior to his commission of the instant offense. Thus, not only was Appellant on felony community supervision at the time he shot Officer Zalewski, he was wanted for violating the conditions of his community supervision. The State also presented Appellant's gang affiliation with the Mexican Mafia, and his criminal history consisting of at least six felony convictions, the most recent one in 2019.

Finally, in reviewing pretrial bail decisions by the trial court, appellate courts have compared bail amounts in other cases involving offenses of the same degree. For example, appellate courts have upheld the following bail amounts in felony cases: $500,000 for aggravated assault; $250,000 for aggravated assault on a public servant; $750,000 for aggravated assault with a deadly weapon; $750,000 for aggravated robbery; and $1.9 million for aggravated robbery. *See Ex parte Everage*, No. 03-17-00879-CR, 2018 WL 1788795, at *6–9 (Tex. App.—Austin Apr. 13, 2018, no pet.) (mem. op., not designated for publication) (collecting cases).

Given the serious nature of the offense, the circumstances surrounding the offense as alleged in this case, Appellant's potential sentence, the evidence presented at the hearing, and the lack of evidence showing the family's financial resources and efforts to obtain a bond, we cannot say that the trial court abused its discretion when it concluded Appellant failed to meet his burden of showing that bail in the amount of $750,000 was excessive. We overrule Appellant's eighteenth issue.

*Summary*

Appellant declares that there are "a lot more 14th Amendment violation[s]," and if he included them all, he "would have to write a 1,000[-]page [b]rief." Appellant asked this court "to review all the record." Having done so, we are reassured that all measures were taken to protect Appellant's constitutional and statutory rights, and the applicable rules and procedures were followed.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


July 25, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.